# Exhibit 1

## DECLARATION OF JAN FREDRIK VAN DER STELT

## TRANSLATION EXHIBIT 1

### Petition for conservatory arrest

To the Honourable Judge<br>
President of the District Court<br>
G r o n i n g e n

Says respectfully:

The public company with limited liability **FAIRMOUNT HEAVY TRANSPORT N.V.,** incorporated at Rotterdam, choosing domicile at Rotterdam at the offices of the law firm Smallegange, van Dam & van der Stelt, fro the purpose of this petition also choosing domicile at Groningen, Paterswoldeweg 802, 9701 BC at the offices of the law firm Plas & Bossinade of whom Mr T.S. Plas acts as Proctor for petitioner;

1. Petitionee is the company in accordance with the laws of the place and country of incorporation **OCEANOGRAFIA S.A. DE C.V.**, incorporated at, in any case having their offices at Mexico, Cuidad del Carmen, Campeche, Avenida 4 Oriente Manzana Parque, D-Lote 5. Petitionee is Owner of the vessel CABALLO AZTECA.

2. On or about 10 September 2005 petitioner conclude with petitionee a contract of carriage on BIMCO-Form Heavycon, with regard to the transport of the pipe laying pontoon JASCON 5 from Mumbai, India to:

    *"One safe and suitable port in the Gulf of Mexico, Mexico, to be mutually agreed."*

3. It was further agreed that the transport of the pontoon would be carried out by means of the semi-submersible pontoon FAIRMOUNT FJORD or FAIRMOUNT FJEL, which semi-sub would be towed by the tug DE HONG or another suitable tugboat. Transport was scheduled to pass the Suez Canal and in respect of Freight an amount of USD 5,225,000 was agreed upon.

4. The Contract was subject to English law with jurisdiction Arbitration in London. Exhibit 1 to this petition is a copy of the Contract as signed by petitionee. Exhibit 2 is page 2 of Part1, now also signed by petitioner.

5. With regard to Freight it was agreed that 10% was to be paid at the time of signing the Contract, 15% to be paid at the start of the mobilisation of semi-sub pontoon and tugboat, 25% at ready for loading the semi-sub pontoon, 25% at Suez Canal passage, 15% 15 days prior to arrival at the place of destination and 10% 48 hours before discharging as per Clause 33 of the Heavycon.

6. As therefore agreed petitioner invoiced the first and second instalment to petitionee, which instalments were paid by petitionee on respectively 16 September 2005 and 12 October 2005, a total amount of USD 1,286,250. These payments were effected after petitionee was repeatedly reminded by petitioner to pay. As petitionee made the agreed and invoiced payments with delay, and now that the fees for passing the Suez Canal for mobilising the pontoon and tugboat to Mumbai of USD 900,000 had to be paid by petitioner 7 days in advance, the parties agreed on 11 October that the third instalment would be paid by petitionee on 20 October. Exhibit 3 is the relevant invoice for the third instalment. Notwithstanding the confirmation by petitionee by email of 21 October, that: *"I would like to inform you that we have given the instruction to wire the funds to your account value date today"*, payment of the invoiced amount of USD 1,312,500 was not received. That payment was also not received after the reminders that were sent to petitionee, several per day, until and including 27 October. Pursuant t the conditions of carriage as agreed upon between the parties and English law, petitionee was put on notice by fax of 27 October that non-payment of the third instalment constituted default under the Contract of carriage. Further petitionee was put on notice that as a result of this default petitioner could no longer be held to perform under the Contract and that petitionee would be liable for all losses in that respect. Exhibit 4 is a copy of that fax.

7. Thereafter petitioner negotiated with Dutch counsel for petitionee regarding a settlement or solution to the apperent cash flow problems of petitionee. On 31 October additional terms for payment were agreed between the parties. However, on 2 November it was established that petitionee could also not fulfil these terms, in any case refused to fulfil those terms.

8. By letter of 3 November 2003 petitioner terminated the Contract of carriage, holding petitionee liable for all costs and losses resulting thereof. Exhibit 5 is a copy of that letter.

9. Exhibit 6 is a claim calculation made by petitioner showing the provisionally assessed loss to be USD 3,440,449.80, being loss of income as well as compensation for the disbursements petitioner had already incurred in order to carry out the Contract. The above mentioned amount is to be increased with USD 250,000 for the expected legal costs to be incurred in respect of arbitration proceedings. Petitionee has meanwhile been notified that petitioner has appointed Mr Michael Baker-Harber as arbitrator in accordance with Clause 32.1 of the Heavycon.

10. Resulting from the non-performance by petitionee, petitioner is incurring costs and financial losses as set out above, provisionally estimated at USD 3,690,450. As mentioned above petitioner has received USD 1,286,250 which amount is to be deducted from the provisionally estimated losses, the balance being USD 2,404,200 for which amount petitioner is seeking security.

11. Therefore petitioner rightfully may arrest assets of petitionee to secure her claim against them.

12. Petitionee is the Owner of the vessel CABALLO AZTECA, presently at the Repair yard of Royal Niestern Sander at Delfzijl, The Netherlands, being within your District. Petitioner respectfully requests your Honour to grant leave for the arrest of the vessel in order to obtain security for their claim.

13. Now that the main claim was meanwhile brought against petitioner in arbitration, Your Honour will not have to decide on the terms for main proceedings.

14. Your Honour is competent to hear this request as the vessel is within Your jurisdiction.

THEREFORE:

Petitioner repectfully requests Your Honour to grant leave for the conservatory arrest of the vessel CABALLO AZTECA for security to the amount of USD 3,125,460, being the provisionally estimated claim increased with 30% for interests and costs.

Groningen,   November 2005

Page 6 of Exhibit 1 shows the Decision:

GRANTED AS REQUESTED:

Assessing the provisional claim of petitioner, inclusive of interest and costs, at USD 4,797,585.

Signed on 10 November 2005 by the President of the Groningen District Court.

*[Margen izquierdo en ambas páginas: nombre de los Agente judiciales, dirección postal, datos de contacto, horario de apertura, datos bancarios y número de IVA]*
*[Margen inferior en ambas páginas: Toda responsabilidad se limita a la cantidad implicada por caso concreto. Logotipo. Fondo de Garantía de los Agentes judiciales]*



JANS & HARTMAN Agentes Judiciales

L0501447

& Bossinade
802, Postbus
letrado

El Lcdo. T.S. Plas, del bufete de abogados Plas Advocaten, sito en la calle Paterswoldseweg 1100, *[código postal]* 9700 BC en Groninga, es el encargado de tramitar este asunto.

- - - - - - - - - - - - - - - - - -

cinco;

Hoy, a dieciocho de noviembre de dos mil

A solicitud de la sociedad anónima FAIRMOUNT HEAVY TRANSPORT, N.V., sita en Rótterdam, que elige domicilio, a estos efectos, en la ciudad de Groninga, en la calle Sylviuslaan núm. 6, en las oficinas de los Agentes judiciales Jans & Hartman.

Yo, JACOB ALBERT HARTMAN, en mi calidad de Agente judicial de Groninga, y con oficinas en esa localidad, en la calle Sylviuslaan núm. 6.

HE CITADO:

A la persona jurídica constituida según el Derecho del país y del lugar de domicilio, OCEANOGRAFÍA S.A. DE C.V., sita y con oficinas en MÉXICO, Cuidad del Carmen, Campeche, en la Avenida 4 Oriente Manzana Parque, D-Lote 5.

Transmitiendo, por consiguiente, en la oficina del funcionario del Ministerio Fiscal, en el Juzgado de Primera Instancia de Groninga, sito en la calle Guyotplein núm. 1, en Groninga, dos copias de esta cédula y de los documentos a mencionar más adelante, y su correspondiente traducción al español, entregadas a;

empleado(a) de esta oficina;

En virtud de lo dispuesto en los artículos 3 a 6, inclusive, del Convenio de notificación y traslado de documentos, de 1965, se ruega notificar, con observancia de las formalidades

descritas en la legislación del Estado requerido para la notificación o traslado de documentos redactados en dicho País, y destinados a las personas que allí se encuentran.

Una tercera copia de éstos ha sido enviada por mí, el Agente judicial, en la fecha, por correo certificado con acuse de recibo a través de la empresa TPG-Post, al domicilio del requerido.

NOTIFICÁNDOLE:

1. El escrito de interposición mediante el cual el requirente se ha dirigido al Juez de medidas provisionales del Juzgado de Primera Instancia de Groninga, junto con el fallo correspondiente, con fecha de 9 de noviembre de 2005, en virtud del cual se ha concedido la autorización para la práctica del embargo preventivo de propiedad extranjera sobre el barco en ellos mencionado.

2. Una copia del acta con fecha de 10 de noviembre de 2005, elaborada por el secretario judicial, señor J.A. Hartman, en Groninga, en la cual, en virtud de la providencia mencionada bajo 1), se ha procedido a practicar el embargo.

La notificación ha tenido lugar conforme a las disposiciones legales.

Los gastos de esta notificación son:

| | |
|---|---|
| Notificación | 60,90 € |
| Gastos de envío | pro memoria |
| | 60,90 € |

Agente Judicial

../..

*[Traducción jurada del neerlandés al castellano]*

€ 95
Tasas

judiciales, pagadas

Postbus 664
Secretario
3000 AR Róterdam
Instancia

Recibido en el despacho del
judicial del Juzgado de Primera
*[ilegible]*
9 de noviembre de 2005

Boompjes 554
NL 3011 XZ Róterdam
786

*[texto manuscrito]* 82927 PRKVRK 05-

---
SMALLEGANGE, VAN DAM & VAN DER STELT
Abogados
---

Tel.: 010 - 2010070
Fax : 010 - 4124772
E-mail: mail@sdlaw.nl

**Escrito de interposición para solicitud de embargo preventivo de propiedad extranjera**

A Su Señoría don/doña
Juez de medidas provisionales
del Juzgado
de Primera Instancia de
**Groninga** *[Países Bajos]*

exponiendo, respetuosamente, que:

la sociedad anónima **FAIRMOUNT HEAVY TRANSPORT N.V.**, con domicilio en Róterdam *[Países Bajos]*, eligiendo domicilio, a estos efectos, en Róterdam, en el bufete de abogados Smallegange, van Dam & van der Stelt, así como en Groninga, en la calle Paterswoldseweg 802, *[código postal]* 9701 BC, en el bufete de la sociedad de abogados Plas & Bossinade, de la que el Lcdo. don T.S. Plas, en la presente causa, ha sido designado como procurador por la demandante.

1. La demandada es la persona jurídica **OCEANOGRAFÍA S.A. DE C.V.**, constituida según el Derecho del país y lugar de su domicilio, sita en México y con oficinas en Ciudad del Carmen, Campeche, en la Avenida 4 Oriente, Manzana Parque, D-Lote 5. La demandante es propietaria del buque CABALLO AZTECA.

2. El 10 de septiembre de 2005, o en fecha cercana, la demandante concluyó un acuerdo de transporte de carga con la demandada, según el formulario BIMCO Havycon, concerniente al transporte de la gabarra para tendido de tuberías JASCON 5, desde Mumbai, India, hasta:

   *[literalmente]*
   *"One save and suitable port in the Golf of Mexico, Mexico, to be mutually agreed".*

   "Un puerto seguro y adecuado en el Golfo de México, México, a convenir de mutuo acuerdo".

3. Se acordó que el transporte de esta gabarra para tendido de tuberías se llevaría a cabo en la gabarra sumergible FAIRMOUNT FJORD o en la FAIRMOUNT FJEL, gabarra sumergible que sería remolcada con la remolcadora DE HONG, u otra remolcadora apropiada. El transporte tendría lugar a través del Canal de Suez y, en lo que respecta al flete marítimo, se acordó la suma de 5.225.000 dólares.

4. Sobre el contrato de fletamento se declaró de aplicación el Derecho inglés y, con respeto a la jurisdicción de arbitraje, la ciudad de Londres. El **anexo 1** es una copia del contrato de fletamento concluido por la demandada. El **anexo 2** es la página 2, de la Parte 1, ahora firmada, también, en nombre de la demandante.

5. Con relación a los fletes marítimos se convino que un 10% se pagaría en el momento de la firma del contrato de fletamento, un 15% al iniciarse la movilización de la gabarra sumergible y la remolcadora, un 25% en el momento de estar lista la carga, un 25% al pasar el Canal del Suez, un 15% 15 días antes de la fecha esperada de llegada al sitio de descarga y, un 10% 48 horas antes del inicio de la descarga del cargamento. (Cláusula 33 Heavycon).

6. Conforme a lo convenido, la demandante facturó a la demandada el primer y el segundo plazo, que fueron abonados por la demandada, respectivamente, el 16 de septiembre de 2005 y el 12 de octubre de 2005, por una suma total de 1.286.250 dólares. Estos pagos se abonaron tras repetida intimación. Dado que la demandada abonó los pagos con retraso, y habida cuenta que los costes de paso por el Canal de Suez ascienden a 900.000 dólares, y la demandante debía pagar dicha suma con siete días de anticipación a la fecha de paso a las autoridades del Canal de Suez, las partes acordaron, el 11 de octubre de 2005, con respecto al pago del tercer plazo, que este sería facturado, y se pagaría el 20 de octubre de 2005. La factura se aporta, a este proceso, como **anexo 3**. No obstante la confirmación de la demandada, mediante correo electrónico de fecha 21 de octubre de 2005: *"I would like to inform you that we have given the instruction to wire the fund to your account value today"* - "Me permito informarle que hoy hemos dado la orden de transferir el dinero a su cuenta", no se recibió el pago de la suma facturada de 1.312.500 dólares. Asimismo, tampoco se recibió el pago después de haber intimado a la demandada, en este sentido, varias veces al día, hasta el 27 de octubre del año en curso. De conformidad con las condiciones de fletamento, de aplicación entre las partes, y en virtud del Derecho inglés aplicable, se le notificó a la demandada, mediante fax con fecha de 27 de octubre de

2005, que la falta de pago del tercer plazo, se consideraba como un supuesto de incumplimiento imputable de la obligaciones derivadas del contrato de fletamento, y, que la demandante, por lo tanto, no había podido cumplir sus obligaciones. Asimismo, la demandante notificó a la demandada, que ante su incumplimiento, la demandante ya no seguía estando obligada, por más tiempo, a cumplir las obligaciones derivadas del contrato de fletamento, y que, en consecuencia se haría responsable a la demandada por los daños y perjuicios que sufriera la demandante al respecto. El **anexo 4** es una copia del fax en cuestión.

7. Desde entonces, las conversaciones han tenido lugar entre la demandante y el abogado neerlandés de la demandada a fin de llegar a un arreglo sobre la disputa, o al menos, a una solución de los evidentes problemas de pago de la demandada. En este sentido, alrededor del 31 de octubre de 2005, se pactaron acuerdos complementarios de pago entre las partes. Empero, el 2 de noviembre de 2005, se comprobó que la demandada tampoco había cumplido estos acuerdos, o por lo menos, se negaba a cumplirlos.

8. Mediante escrito de fecha 3 de noviembre de 2005, la demandante rescindió, finalmente, el contrato de fletamento, haciendo responsable a la demandada de todos los daños y perjuicios que, por ello, sufriera la demandante. El **anexo 5** es una copia del escrito en cuestión.

9. El **anexo 6** contiene el cálculo provisional, hecho por la demandante, de los daños y perjuicios sufridos hasta el momento, que asciende a una suma total de 3.440.449,80 dólares, y corresponde a la pérdida de ingresos y a los gastos en que la demandante ha debido incurrir para la ejecución del contrato de fletamento. El importe del citado cálculo provisional deberá

aumentarse con una partida de 250.000 dólares en concepto de los costes jurídicos de arbitraje estimados. Se ha notificado a la demandada la demandada el inicio del arbitraje en virtud de la Cláusula 32.1 del contrato de fletamento, habiendo sido nombrado como árbitro, en nombre de la demandante, el Lcdo. don Michael Baker-Harber. Dicho nombramiento tuvo lugar el 7 de noviembre del año en curso.

10. Como resultado del incumplimiento imputable, por parte de la demandada, de sus obligaciones derivadas del contrato de fletamento, la demandante ha sufrido daños y perjuicios valorados, por el momento, en 3.690.450 dólares. Según se desprende de lo indicado anteriormente, la demandante ha recibido, de la demandada, en concepto de los pagos vencidos, la suma total de 1.286.250 dólares; suma que se descontará de la cantidad reclamada, por lo que el importe, sobre el que la demandante reclama garantía, asciende a 2.404.200 dólares.

11. En vista de lo anterior, la demandante, a efectos de obtener garantía sobre la reclamación del cálculo provisional de 3.690.450 dólares, o al menos, sobre la suma de 2.404.200 dólares, tras el descuento del flete recibido, está en su derecho y le interesa solicitar la constitución de embargo preventivo de propiedad extranjera, frente a la demandada.

12. La demandada es propietaria del barco CABALLO AZTECA, que se encuentra en los astilleros de Koninklijke Niestern Sander en Delfzijl [Países Bajos], Doklokatie West [Dique Seco Oeste], o al menos, dentro de su jurisdicción. La demandante solicita, a fin de obtener garantía sobre la indemnización, contenida en la reclamación, de la cantidad (restante) mencionada, la constitución de embargo preventivo de propiedad extranjera sobre el barco mencionado, por lo que la

demandante solicita la autorización de su Señoría, a estos efectos.

13. Dado que la reclamación, en la causa principal, frente a la demandada, ya se ha iniciado con el nombramiento de un árbitro por parte de la demandante, de conformidad con las cláusulas del contrato de fletamento, no es necesario fijar un plazo para la presentación de la reclamación principal.

14. Su Señoría está facultada para conocer de la solicitud anterior, dado que el barco mencionado se encuentra dentro de su jurisdicción.

**POR LO QUE:**

La demandante se dirige su Señoría don/doña Juez de medidas provisionales y le ruega respetuosamente que admita el cálculo provisional de la reclamación en 4.797.585 dólares, incluidos el interés del dinero y las costas, y autorice la constitución de garantía sobre la indemnización, contenida en la reclamación, de la cantidad calculada que asciende, sin embargo, a 3.125.460 dólares (en letra: tres millones ciento veinticinco mil cuatrocientos sesenta dólares) (correspondiendo 2.404.200 dólares aumentados en un 30% al interés del dinero y a las costas), por la práctica del embargo sobre el barco CABALLO AZTECA, que se encuentra dentro de su jurisdicción y declare la resolución a dictar en esta causa, de ejecución inmediata.

Groninga, [ ] noviembre de 2005          Como Procurador,
                                          a estos efectos
                                          [firma ilegible]

**SE ADMITE EN VIRTUD DE LO SOLICITADO:**

El cálculo contenido en la reclamación descrita en el escrito de solicitud de la demandante, con inclusión del

interés del dinero y de las costas, estimado provisionalmente en 4.797.585 dólares y además, se autoriza la práctica del embargo preventivo de propiedad extranjera sobre el barco por una cantidad, calculada provisionalmente, en *[sigue espacio en blanco entre corchetes]* (en letra: *[sigue espacio en blanco]* dólares).

Groninga, [ 9 ] de noviembre de 2005           El Juez de medidas
    provisionales,

Acerca del caso entre Fairmount y Oceanografía – número de expediente 2050261

El presente caso ha sido tratado por el Lcdo. J.F. van der Stelt, Smallegange, Van Dam & Van der Stelt *[sigue la dirección postal y datos de contacto de este bufete de abogados]*.

Núm. de registro 82927/PR KV RK 05-786

Se admite, en virtud de lo solicitado, el cálculo contenido en la reclamación descrita en el escrito de solicitud de la demandante, con inclusión del interés del dinero y de las costas, provisionalmente en 4.797.585 dólares.

Groninga, 10 de noviembre de 2005-11-17

*[Firma ilegible]*

El Secretario judicial          El    Juez   de    medidas
provisionales [Firma ilegible]

../..