PO Box 664
3000 AR Rotterdam
The Netherlands

Boompjes 554
NL 3011 XZ Rotterdam
The Netherlands

Tel.: +31 10 2010070
Fax: +31 10 4124772
E-mail: mail@sdslaw.nl

## SMALLEGANGE, VAN DAM & VAN DER STELT

Attorneys at Law

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

TRANSPORTES NAVIEROS Y
TERRESTRES, S.A. DE C.V.,

              Plaintiff,                              07 CV3076(LAP)

   -against-

FAIRMOUNT HEAVY TRANSPORT N.V.,

              Defendant.
-------------------------------------------------------X

### SECOND DECLARATION OF JAN FREDRIK VAN DER STELT

I, JAN FREDRIK VAN DER STELT, declare as follows,

1. I am a Partner in the Law Firm Smallegange, van Dam & van der Stelt of Boompjes 554, 3000 AR Rotterdam, The Netherlands. I have been asked by the Defendant, Fairmount Heavy Transport N.V. ("FHT") to make this second declaration with regard to the Ex Parte Order brought by Transportes Navieros Y Terrestres, S.A de C.V. ("TNT") against Fairmount Heavy Transport N.V. ("FHT") for an alleged claim for wrongful arrest on the vessel CABALLO AZTECA ("the vessel") on 10 November 2005, while that vessel was undergoing repairs at the Ship Repair Yard of Royal Niestern Sander B.V. at Delfzijl, The Netherlands and with regard to the Declarations filed in support of TNT's Memorandum of Law in Opposition to FHT's Motion to Vacate Attachment.

SMALLEGANGE, VAN DAM & VAN DER STELT
Advocaten

2. I have been shown the Memorandum in support to TNT's Opposition and the Declarations of Mr Mario Flores Reyes, Mr Sebastiaan Moolenaar, Mr Michael Hajdasinski and Mr Adriaan Eggens in support of that Memorandum. The following comments are restricted only to the matters of Dutch law raised in the Memorandum and the Declarations as identified above, and to facts which are within my own personal knowledge.

3. Mr Sebastiaan Moolenaar declares that his advice was sought by Oceanografia, SA de CV in approximately November 2005 soon after the arrest. Mr Molenaar then declares that after having received his instructions he asked Oceanografia for documentation to support their position as instructed and that: *"over a period of months I communicated with Oceanografia occasionally and received various documents and translations"*. After that period of months Mr Molenaar: *"ultimately concluded that TNT apparently was the Owner of the vessel at the time of the arrest"*. Mr Molenaar continues to declare that therefore the arrest appeared to have been wrongful. I disagree with Mr Molenaar as at that time, without FHT having been notified or put on notice by alleged Owners, the arrest was not wrongful under Dutch law.

4. The test for wrongful arrest under Dutch law is that an arrest becomes wrongful as soon as a party other than the debtor identifies itselve as the rightful Owner and demands the vessel to be released. The arresting party is in principle liable, if upon such notification the arrest is not lifted, but this is subject to evidence of a loss resulting from any delay in lifting the arrest.

5. It is pointed out in this respect that at no time between the date of the arrest and the period of months that followed the arrest and the time it took Mr Moolenaar to conclude that: *"TNT apparently was the Owner of the vessel"*, did Mr Molenaar contact FHT or their counsel in respect of the arrest. Therefore, under Dutch law and if Mr Molenaar's conclusion was correct, the arrest would only be deemed wrongful as from the date the rightful Owner identified itself and if the arrest was not then lifted. That was, as stated in my Declaration, on 15 May, 2006 when TNT's counsel Mr Hajdasinski challenged the arrest, where after the arrest was lifted forthwith on the strength of the documents shown at that point in time.

SMALLEGANGE, VAN DAM & VAN DER STELT
Advocaten

6. With reference to the above identified test for wrongful arrest I disagree with the 2nd paragraph of the Declaration made by Mr Michael Hajdasinski. The arrest will not be unlawful unless the rightful Owner has identified itself to the arresting party. Mr Hajdasinski omits to state that it was not until May 15, 2006 that he approached counsel for FHT and identified his client TNT as the rightful Owner of the vessel. On the strength of the documents that were disclosed at that point in time, the arrest was immediately lifted on 16 May, 2006.

7. Whilst I agree that the comments in paragraph 4 of Mr Hadjinski's Declaration are correct in principle, those comments are irrelevant because as explained above the arrest was not wrongful as a matter of Dutch law. I emphasize that Mr Hajdasinski stated in his letter of 15th May 2006, Exhibit 5 to my Declaration, that his clients were preparing the vessel for departure as the vessel was stemmed to be employed in Mexico as from 8th June, 2006.

8. After the arrest was effected, on 11 November, 2005, I received a telephone call from the Yard. The Yard's representative asked to be informed regarding any possible consequences of the arrest and asked whether the arrest would allow the Yard to continue their repair work. I confirmed that the arrest should not interfere with the repair work. At that time the Yard's representative mentioned to me that work was carried out by the Yard on the basis of advance payments made by their Principal and that as soon as such advance payment ran out, work was discontinued awaiting a further advance payment.

9. On 27 April I contacted the Yard and spoke to Mr Eggens who, according to the Company Register of the Chamber of Commerce (a copy of a transcript is attached at Exhibit 1) has been a director of the Yard since 1 October 2006. I asked Mr Eggens to confirm that the vessel was not delayed by the arrest (as was already shown by the information provided by the Port Authorities) but he refused to cooperate given the good commercial relationship he said he has with Oceanografia. Mr Eggens did mention, however, that all the repair bills had been paid by Oceanografia.

SMALLEGANGE, VAN DAM & VAN DER STELT
Advocaten

10. It is stated in the Memorandum, page 5, line 6, that it follows from the Declaration of Mr Mario Flores Reyes, the vessel's Chief Engineer, that at the time of service of the arrest documents on board of the vessel, *"the delegates of Fairmount"* were informed about the Ownership of the vessel. In accordance with Dutch law the arrest documents were served on board by a process server, as confirmed by Mr Reyes in his Declaration. The process server is an Officer of the Court and is not a "delegate" of one of the parties in a dispute.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct

Executed on this _11_ Day of May 2007

J.F. van der Stelt