UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TRANSPORTES NAVIEROS Y
TERRESTRES, S.A. DE C.V.,

          Plaintiff,                    07 CV 3076 (LAP)

-against-

FAIRMOUNT HEAVY TRANSPORT N.V.,

          Defendant.
-------------------------------------------------------X

### SECOND DECLARATION OF Ph.D. OMAR OLVERA DE LUNA

1.     My name is Omar Olvera de Luna; I was born in Mexico City on July 1st 1943. I attended Universidad Nacional Autonoma de Mexico School of Law ("UNAM"), the largest and most respected University in the Hispanic World, graduating in the class of 1965, and have been admitted to the bar in the whole Mexican Republic since 1968. I have been a Corporate, Commercial Contracts and Maritime Law Professor at UNAM since 1970. I have written two Law Hornbooks and one text book, the first hornbook is Maritime Law written in 1981, the second is Commercial Contracts written in 1982 and the text book is Corporate Law which is used at the Corporate Law class at UNAM. I was granted a degree in Philosophy Doctor in Law by Pacific Western University. I also received a degree in Philosophy Doctor in International Maritime Law by Atlantic International University. Furthermore, I was granted the "Honoris Causa" degree as a Philosophy Doctor in Law also by Atlantic International University. Recently, I received the honorary degree of "Doctor of the Academic Claustro of the Legal Department" at UNAM. I have been a member of the Mexican Bar Association since 1978. I am the founding partner of my law firm of Olvera & Monroy Abogados which has been in existence since 1968 where I have practiced Maritime, Commercial, Contract and Criminal Law.

### MEXICAN MARITIME AND CRIMINAL LAW

1.     Mr. Arista inaccurately states in paragraph 6 of his second declaration that "No specific relief for damages is requested [in the complaint] but only the detention of the vessel", in fact on the complaint filed in Tabasco with the number DAPF-54/2007 does contain a clear and unequivocal request for damages specifically for the wrongful arrest of "*Caballo Azteca*". (See pages 3 and 4 of complaint, attached hereto as Exhibit 1).

2.  Where Mr. Arturo Arista does discuss the issue of damages, in his point 23 and 24, he bases his fundaments on **non-existent or abolished articles** of the Federal Criminal Proceedings Codes, articles 31 and 31 *bis*.

3.  In Mexico, charter hire that would have been earned but for a wrongful arrest is a recoverable element of damages.

4.  Mr. Arturo Arista does not apply article 20 paragraph b) subsection IV of the Mexican Constitution in his points 18, 19, 20 and 21. The article provides the victim or offended in a criminal proceeding with the reparation of damages. The article also clarifies the fact that the victim, not the District attorney may seek damages, even though the article does not say exactly that, it is construed that since it is a victim's Constitutional Individual Guarantee, then the victim also has the right to petition it.

> **Article 20.-** In every criminal trial the **victim or the accused shall enjoy the following guarantees:**
> ...
> B.- Of the victim or person offended:
> ...
> IV.- **Have damages repaired.** In the appropriate cases, the District Attorney will be obligated to **seek repair of the damages**, and if the judge has delivered a guilty sentence, the judge may not absovle the convicted person of the repair of the damages. (emphasis added)

5.  In Mexico there is no singular article, statute or opinion that articulates every maritime claim. Rather, claims that involve or concern vessels, ports, maritime transport, maritime companies, shipping agents, vessels, crew, the merchant marine, ship owners are regarded as maritime matters. The present matter before the court concerns the unlawful arrest of a vessel and in Mexico when a vessel is involved in a legal matter it is traditionally considered a maritime legal controversy, even if the underlying claim is criminal in nature. This point is even conceded in the first declaration of Mr. Arturo Arista in paragraph 8(d) who stated that "In more than twelve (12) years of experience in shipping law I have seen that **criminal complaints** are filed in respect to **maritime claims** due to the fact that it is easier and simpler to obtain the temporary detention of a vessel, even if in the end there are really no merits to support the accusation" (emphasis added).

6.  In Mexico, the jurisdiction of the federal courts is limited to certain enumerated matters. Under Article 104(II) of the Mexican Constitution maritime matters are within the jurisdiction of the federal courts ("De todos las controversias que versen sobre derececho maritimo") ("Of all controversies relating to maritime rights"). The claims brought by TNT in Mexico relate to maritime rights. The wrongful arrest claim relates to a vessel, an illegal restraint of the vessel, a plaintiff (TNT) that is a registered maritime company in Mexico under maritime law, and alleged interference with the performance of a charter agreement for use of a vessel. Under Mexican Law TNT's claim is clearly a maritime claim. As noted above, however, maritime matters can also be brought under the criminal jurisdiction.

7.  Even though, Mr. Arturo Arista states that Mexican courts do not have jurisdiction over this matter, in point 17, Mexico does have jurisdiction based on the

fact that the vessel had a Mexican Flag. This is supported on article 5 of the Navigation and Maritime Commerce Act, article 5 of the Federal Criminal Code and article 2 of the Criminal Code of Tabasco.

---

Navigation and Maritime Commerce Act

**Article 5.** The Mexican naval vessels and artifacts will be subject to Mexican law, even when they are outside of Mexican jurisdictional waters, regardless of foreign law if they are in those waters.
...

---

**Article 5.** The following will be considered committed in the [Mexican] Republic territory:

**I.** the crimes committed by Mexican or foreigners in high seas on board of a national vessel.

**II.** The ones **committed on board of a national war vessel which is in a foreign port** or foreign territorial waters. **This will extend to the case that the vessel is a merchant** one if the criminal has not been judged in the nation where the port is from.
(emphasis added)

---

**Article 2.** It will be applied [the Criminal Code of Tabasco] to the following crimes:

**I.** Instantaneous [crimes] committed in a different entity when its effects are produced within the Tabasco territory.

**II.** Permanent or **continued** [crimes] **committed in a different entity** and that will **keep happening in the State of Tabasco**.
(emphasis added)

---

8.  In response to Mr. Arturo Arista's point 6 in his second declaration where he says that "Plaintiffs refers to criminal proceedings that *allegedly* are pending in Mexico..." (emphasis added), when a complaint or "*denuncia y querella*" has been filed and an "*Averiguación Previa*" (criminal investigation) is opened with the number DAPF-54/2007 where it is a pending matter that the Master Jan Weerman must declare in court and who **disobeyed** the District Attorney's order in April 14, 2007, then it cannot be said that "allegedly proceeding" is pending. There *is* a criminal proceeding in Mexico whether it is called "*Averiguación Previa*" (Previous Investigation) and the District Attorney is not officially prosecuting it, as Arturo Artista mentions in his point 11, the Mexican Constitution does classify it as a **criminal action** ("*acción penal*"), not an administrative proceeding as Mr. Arista tries to state it. The Constitution in its article 21 sates the following:

---

**Article 21.** The imposition of the convictions is exclusive for the judicial authority.
...
The resolutions of the District Attorney ("*Ministerio Público*") regarding the no exercise and the desistance of the criminal action ("*acción pena"l*), can be challenged through the jurisdictional system in the terms the laws dictate.

---

> (emphasis added)

9.  Mr. Arturo Arista's second declaration point 16 where says that "Mr. Olvera could not cite an article or section of any law that supports his view that a wrongful arrest can be considered a crime and the reason is simple: because Mexican Maritime law does not refer to crimes but to administrative sanctions that could be imposed by the administrative authorities in certain cases". Mr. Arturo Arista wants a specific article to be cited. However, the offended or victim when filing a criminal complaint is prohibited to legally classify the facts for which he is filing, basically to point out a specific crime, for the same reason the victim or offended should not cite a specific article in any court fillings since it can be construed as to violate the law. Mr. Arturo Arista himself affirms it in his points 19 and 20 when he cites article 118 of the Federal Criminal Proceedings Code.

> **Article 118.** The complaints can be filled orally or in writing. They will be restricted in any case to describe the facts that are supposedly criminal, **without making any legal classification** and they will be made in the terms of the exercise of right of petition. If a complaint does not comply with the above requirements, the officer that receives it will inform the claimant that the complaint must be modified to comply with said requirements.
> (emphasis added)

10. In addition, the Criminal Proceedings Code of the state of Tabasco in its article 116 only grants permission to describe the facts without making a legal classification in a complaint. For these reasons the offended or victim cannot mention the specific crime or even cite an article.

11. Regarding Arturo Arista's points 27, 28, 29 and 30, the Ship Master JAN WEEMAN left port on April 13, 2007 at 19:00 o'clock with a *"Despacho"* a permit to leave port given by the master harbor. However, the permit establishes the obligation to use a port pilot in order to maintain the safety of the port, the oil installations and the town of Paraíso Tabasco. The Master Jan Weeman did have a permit but left port before 19:00 o'clock and without a port pilot. Mr. Arturo Arista did not show with the *despacho* (shown as Exhibit 1 in Mr. Arturo Arista's second declaration) the receipt of the port pilot and the logbook, knowing that this would show the illegal acts done by the Master, which has been added to the criminal proceeding *"Averiguación Previa"*. Thus, the Fairmont Glacier did leave the Mexican Port illegally, in contrary to what is stated in Mr. Arturo Arista's points 27, 28, 29 and 30 of his second declaration. The Port Pilots are not only governed in articles 55, 56, 57 and 58 of the Navigation and Maritime Commerce acts which obliges the ship masters to use the service of the port pilots in order to enter or leave Mexican Ports, but they are also governed by article 32 of the Mexican Constitution.

12. In response to point 31 of Mr. Arturo Arista's second declaration, the criminal complaint in Tabasco was filed against the owner of the vessel Fairmount Glacier. In fact the complaint was files against the following Fairmount entities: Fairmount Beheer C.V, Fairmount Marine B.V., Fairmount Beheer B.V., Fairmount Heavy Transport N.V. and Fairmount Marine Services B.V., under article 16 of the Mexican Constitution.

13.  In respect to Arturo Arista under Mexican and U.S. law he should only use legal arguments and not use words like "false allegation", "outrageous statement", "seriously misleading", "unsupported and false", "without any support", "poorly". Arturo Arista when using these defamatory expressions is subject to disciplinary proceedings under article 352, subsection III of the Mexican Federal Criminal Code.

Respectfully submitted,

*Omar Olvera Jr.*

**Omar Olvera de Luna**