UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
TRANSPORTES NAVIEROS Y            :
TERRESTRES, S.A. DE D.V.,         :
                                  :
                    Plaintiff,    :
                                  :     07-CV-3076(LAP)
       - against -                :
                                  :
FAIRMOUNT HEAVY TRANSPORT N.V.,   :
                                  :
                    Defendant,    :
------------------------------------------------------- X

**TNT'S SUPPLEMENTAL MEMORANDUM OPPOSING
MOTION TO VACATE ATTACHMENT**

As noted in yesterday's hearing, Fairmount disputes that TNT has a *prima facia* maritime claim. Otherwise, Fairmount concedes that the requirements of Rule B are satisfied.

**A. For Rule B purposes, a *prima facia* claim is an adequately pleaded one in a Verified Complaint - nothing more.**

In a decision rendered just weeks ago, Judge Kenneth Karas of this Court addressed the very issue raised by Your Honor: What is a sufficient *prima facia* showing under Rule B? In *S.P.L. Shipping, Ltd. v. Gujarat Cheminex, Ltd.*, 2007 WL 831810 (SD NY March 15, 2007), Judge Karas denied the defendant's motion to vacate under Rule E(4). In so ruling, Judge Karas determined that a plaintiff need only make appropriate allegations in a Verified

1

Complaint – and need not introduce evidence – in order to satisfy Rule B and defeat a motion to vacate:

> The Second Circuit has not opined on what a Plaintiff must show to make out a "*prima facia* admiralty claim." Chief Judge Wood, in *Tideline*,[1] explained that **the Plaintiff is not required to produce evidence at this stage to support its allegations and that any challenge must be based on the sufficiency of the Complaint.**[2] Chief Judge Wood's analysis of this issue is consistent with the limited inquiry contemplated by *Aqua Stoli* and comports with a basic definition of the term "*prima facia*." Therefore, this Court will look only to Plaintiff's pleadings, and not to any evidence submitted by the Parties to determine whether Plaintiff has made a legally sufficient claim for piercing the corporate veil.[3]

As Judge Karas notes, he followed the guidance of Chief Judge Wood. In *Tideline, Inc.*, Judge Wood likewise ruled that a Plaintiff opposing a motion for vacature need not produce evidence to prove its claim at the Rule E(4) hearing stage. According to Judge Wood, the competing reasonable-grounds standard is improper because it is inconsistent with the Second Circuit's recent *Aqua Stoli* decision:

> The Court of Appeals' holding and rationale in *Aqua Stoli Shipping, Ltd.* also strongly undermined the standard, stated in a number of cases, that the hearing pursuant to Supplemental Rule E(4)(f) is intended to "make a preliminary determination whether there were reasonable grounds for issuing the warrant." This standard has been defined as "probable cause" or "reasonable grounds." Under this standard, in order to

---

[1] *Tideline, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979 (SD NY Aug. 15, 2006).

[2] See *Tideline*, No.06 Civ. 1979, Aug. 15, 2006, Order at 17.

[3] *S.B.L. Shipping, Ltd.*, 2007 WL8381810, at 3.

2

justify the maintenance of an attachment..., a Plaintiff bears a higher burden than that imposed by Supplemental Rule B...[and must] present some evidence showing reasonable grounds for the attachment. Although *Aqua Stoli* does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment" – including a "valid *prima facia* admiralty claim against the defendant" – implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry.[4] [citations omitted].

Under the appropriate *prima facia* test, Chief Judge Wood explained that a proper Verified Complaint is all that is required to satisfy Rule B and to prevail against a Rule E(4) motion to vacate:

> For a Plaintiff to show that it "has a valid *prima facia* admiralty claim against the Defendant," in the context of maritime attachment, it appears that ***a Plaintiff need not provide anything beyond its Verified Complaint***, pursuant to Supplemental Rules B and E. The Court relies only a Plaintiff's complaint to determine if the Plaintiff has shown that is has such a claim against the Defendant (and on Plaintiff's affidavit to determine whether it appears that the Defendant cannot be found within the District).... Thus to show that it has a *prima facia* claim, ***a plaintiff seeking a maritime attachment need not provide any supporting evidence***; its complaint should suffice. Furthermore, *Aqua Stoli* implies that a Plaintiff is likewise not required to provide evidence showing that it has a claim against Defendant, to carry its burden under Supplemental Rule E(4)(f).

*Tideline, Inc.* 06 Civ. 1979, at 12-13; see also Fed. R. Civ. P. Supp. Rule B(1) ("The court must review the Complaint and affidavit, if the conditions of this Rule B appear to exist,

---

[4] *Tideline, Inc. v. Eastrade Commodities, Inc.*, 06 Civ. 1979 (SD NY Aug. 18, 2006), at 10-11.

enter an order so stating and authorizing processing of attachment and garnishment."); *Aqua Stoli Shipping, Ltd.*, 460 F.3d 434, 438 (2nd Cir. 2006) ("a Plaintiff must file a Verified Complaint praying for an attachment and an affidavit stating that, to the best of the Plaintiff's knowledge, the Defendant cannot be found within the judicial district" and "[i]f the Plaintiff's filing has complied with these conditions, the Court must enter an order authorizing the attachment").

In a still more recent case, Judge Sweet of this Court reached the same conclusion. Rejecting the reasonable-grounds standard, Judge Sweet, in *Dolco Investments, Ltd. v. Moonriver Development Ltd.*, No.06 Civ. 12876, 2007 WL 1237997 (at 4) (SD NY April 26, 2007), wrote:

> The majority of courts in this district to have considered this issue have interpreted *Aqua Stoli* to require the application of the *prima facia* standard when considering the adequacy of the claim in a maritime vacature motion. The Court agrees with the weight of authority in this district, and will apply the *prima facia* standard, as it more closely comports with the Second Circuit's rejection of the "broader Rule E(4)(f) inquiry" that the reasonable-grounds test would necessarily include.

See also *S.B. L. Shipping, Ltd. v. Gujarat Cheminex, Ltd.*, 2007 US Dist. LEXIS 18562, at 8 (SD NY March 15, 2007); *Fesco Ocean Mgmt., Ltd. v. High Seas Shipping, Ltd.*, 2007 US Dist. LEXIS 19970, at 9 (SD NY March 12, 2007); *Secil Maritima U.E.E. v. Malave Shipping*, No.06 Civ. 6345 (SD NY Oct. 10, 2006); *Route Holding, Inc. v. Int'l Oil Overseas, Inc.*, No.06 Civ. 3428 (SD NY Sept. 29, 2006); *Tideline, Inc. v. Eastrade Commodities, Inc.*, No.06 Civ. 1979 (SD NY Aug. 15, 2006).

In short, then, the predominant authority (including the most recent) holds that the *prima-facia* claim requirement of Rule B is satisfied upon the filing of an adequate Verified Complaint. Evidence need not be presented.[5]

This approach makes common sense and comports with the language of Rule B. Rule B does not impose one standard for issuance of the order of attachment and then another, heightened standard to defend the attachment at a Rule 4(e) hearing. Rule B requires in plain language that its prerequisites be satisfied before an order of attachment is issued. This is accomplished in virtually every case by the filing of a Verified Complaint stating a claim with reasonable particularity – and nothing more. The verification by counsel is all that is required to substantiate the allegations at this pleading stage and to meet the *prima facia* requirement of Rule B.

In this case, there is no question but that TNT's Verified Complaint adequately states a claim. The Court's attachment order was therefore proper under Rule B, and the motion to vacate should be denied.

**B. Even if the "reasonable-grounds" test applied, TNT would easily satisfy it.**

Even if the Court rejects the favored *prima-facia* test, and applies the minority reasonable-grounds test, TNT still should prevail. The evidence required by the reasonable-grounds test is minimal: it is something less than a preponderance of the evidence, and has

---

[5] Judge Wood explicitly stated, "Use of the phrase '*prima facia claim*,' in the maritime attachment context, differs from the use of that phrase in other contexts, where it applies evidentiary standard." *Tideland, Inc.* 06 Civ. 1979, at 13,n7.

been likened to the probable-cause standard under criminal law.[6] The evidence submitted by TNT plainly would suffice to meet this standard. To begin with, the arrest of the CABALLO AZTECA was plainly wrongful. It is undisputed that, when the vessel was arrested, it belonged to TNT, a company (Oceanografia) with which Fairmount had no legal dispute. For this reason, Fairmount focuses its attention on damages, alleging that TNT's proof of damages is inadequate to allow the case to go beyond the pleading stage.

Fairmount's argument is meritless. TNT has presented its charter party contract with Con-Dive for use of the CABALLO AZTECA, together with evidence that it was unable to fulfill the contract and deliver the vessel as result of the arrest, which, according to a declaration under oath from the Rotterdam shipyard's manager, delayed the completion of repairs by some four months. If the repairs had been completed four months earlier (than the actual completion date of late July 2006), the CABALLO AZTECA would have been ready in late March, i.e. in time to perform under the charter agreement, which bore a cancellation date (in the event of nondelivery) of April 20, 2006. Further, the charter stipulates that TNT was to earn $100,000 per day under the charter for a term of 365 days, yielding $36.5 million in revenues. These revenues were lost because the charter was lost. Con-Dive's Freeman attests that Con-Dive was forced to hire another vessel to replace the unavailable CABALLO AZTECA. In short, TNT's evidence provides at least probable cause to believe that it may have suffered damages.

---

[6] See *Wajilam Exps., Pte. Ltd. v. ATL Shipping, Ltd.*, 2006 WL 3019558 (SD NY Oct. 23, 2006).

The probable-cause standard is plainly less demanding than the proof required in a summary judgment context. Yet, even in a summary-judgment context, TNT's evidence would pass muster. It is axiomatic that, in considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovant and must draw all reasonable inferences from the evidence presented in favor of the nonmovant.[7] A plaintiff's claim will not be dismissed by summary judgment unless a defendant is entitled to prevail as a matter of law based upon facts as to which there is no genuine dispute.[8]

In applying such standards here, the Court would be bound to accept as true the facts declared to be true by TNT's witnesses, unless proved false by defendant. The Court would be duty-bound to draw all reasonable inferences from the evidence in TNT's favor. At a bare minimum, there are issues of disputed fact here, which require factual development and, ultimately, testimony to allow for the proper assessment of witnesses' credibility.

Rule B surely requires less. But even if summary-judgment standards were applied in this case, TNT would be entitled to prevail.

## C. **TNT's claim is maritime in nature.**

TNT's claim arises under Mexican law and is pending in Mexico. Under Mexican law, TNT's claim arising from the wrongful arrest of the CABALLO AZTECA is a maritime

---

[7] *Scott v. Harris*, 127 S.Ct. 1769 (2007).

[8] Fed R. Civ. p. 56.

claim. This is clearly established in the second declaration of Mexican counsel and legal scholar Omar Olvera. See Exhibit "A."

### D. Conclusion

In an effort to defeat the attachment in this case, Fairmount is attempting to dramatically shift the prevailing legal standards and to require TNT to essentially prove its case through evidence before the pleadings are even complete. As set forth above, Rule B surely does not require this. This case is chock full of material issues of fact that will need to be sorted out through discovery in the course of legal proceedings in Mexico. Having demonstrated the arrest was wrongful and having presented the charter contract under which TNT maintains it would have earned substantial revenues but for the delays triggered by the arrest, and by providing the supporting testimony by declaration of several witnesses from several companies, TNT has done more than enough to satisfy the minimal standards of Rule B for a proper attachment. Fairmount's motion to vacate should be denied.

The Plaintiff,

TRANSPORTES NAVIEROS Y
TERRESTRES, S.A. DE D.V..

By: _____
Martin F. Casey (MFC1415)
CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, New York 10017
(212) 286-0225 - telephone
(212) 296–261 - facsimile
mfc@caseybarnett.com