UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRANSPORTES NAVIEROS Y TERRESTRES, S.A. :
DE C.V., :
: 07 Civ 3076 (LAP)
          Plaintiff, :
: ECF CASE
 - against - :
:
FAIRMOUNT HEAVY TRANSPORT N.V., :
:
:
          Defendant. :
------------------------------------------------------------------X

## SUR-REPLY MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO VACATE ATTACHMENT

    Defendant, Fairmont Heavy Transport N.V. ("FHT"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Sur-Reply Memorandum of Law in Support of its Motion to Vacate and/or Reduce the Maritime Attachment pursuant to Rules E(4)(f) and Rule (E)(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

    FHT writes pursuant to your Honor's instruction at yesterday's post-attachment hearing. Presently, plaintiff Transportes Navieros Y Terrestres, S.A. de C.V. ("TNT") has attached, on an *ex parte* basis, at least $1,256,354.84 pursuant to a Writ that authorized the attachment of $10,220,00.00. FHT has provided this Court with overwhelming proof to demonstrate why TNT filed its action in bad faith, why there is no ongoing admiralty action in Mexico to resolve TNT's claim for wrongful arrest, and why the amount under attachment is grossly excessive given that TNT has failed to produce *any* proof of damages. This brief attempts to cite legal authority in

support of the proposition that a district court has the equitable power to vacate any attachment that it knows to be unfair or brought for an improper purpose.

At yesterday's argument, this Court posed several direct questions to TNT to which TNT had no good answers. The Court asked TNT why it waited from November 10, 2005 until May 15, 2006 to raise its first objection to the arrest when, allegedly, it was losing an astounding $100,000.00 per day. That is, why did not TNT simply pick up the telephone? TNT had no answer. Additionally, the Court inquired of TNT as to why, for example, TNT's Declaration by Wesley Freeman failed to append *any* evidence of damages. The Court went so far as to ask whether Con-Dive actually benefited from TNT's actions. TNT had no answer. Moreover, this Court requested that TNT reconcile its conflicting allegations, *i.e.*, TNT first alleged that the vessel was required to start a charter on June 8, 2006 and later changed its story to allege that it was required to start a charter on March 15, 2006 with Mr. Freeman's company. TNT had no explanation. There are many more similar examples that FHT has already highlighted in its memoranda, which will not be repeated here.

The issue posed yesterday is a legal one: What power does the Court have to vacate or modify the attachment given the evidence that demonstrates that TNT's claims, to use the Court's words, "do not pass the smell test"? Concisely stated, the answer is this that Court is empowered by Admiralty Rules E(4) and E(6). It is also empowered by the decisions from the Second Circuit and the Southern District of New York that are explained below. Specifically, Rule E(4)(f) states that "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the ***plaintiff shall be required to show why the arrest of attachment should not be vacated or other relief granted*** consistent with these rules." (emphasis added). Has TNT made any showing why the attachment should not be

vacated? Similarly, Rule E(6) provides "***Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given…***" (emphasis added). Has not FHT shown the Court good cause why the attachment should be reduced to zero? The Second Circuit's holding in *Greenwich Marine, Inc. v. S.S. Alexandria,* 339 F.2d 901, 905 (2d Cir. 1965) unambiguously held that "***the inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.***" (emphasis added). These authorities make clear that this Court sitting in admiralty has the equitable power to consider the parties' submissions at the post-attachment hearing and to vacate or modify the attachment.

In the words of Judge Haight, the court may vacate if it determines from the parties' submissions that the "plaintiff's claim is so lacking in merit as to be characterized as frivolous." *Rolls Royce Indus. Power, v. M.V. FRATZIS,* 119 AMC 393, 397 (S.D.N.Y. 1996). In the words of Judge Scheindlin, where a "[plaintiff's] claims cannot be deemed frivolous, they should be reduced to account for estimated savings" and that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but "the court must be satisfied that plaintiff's claims are not frivolous." *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F.Supp. 235, 237-238 (S.D.N.Y. 1996). While admittedly the volume of evidence submitted by FHT to demonstrate the bad faith nature of TNT's claim is more than what is typically offered at a Rule E(4)(f) hearing, it was necessary to show the several independent reasons why TNT's case on liability and damages is without merit. TNT would have the Court believe that it is powerless to decide this issue; TNT argues that the underlying claim will be adjudicated elsewhere. TNT would also have this Court believe that so long as the technical requirements of Rule B are met, *i.e.*, that (1) plaintiff has alleged a *prima facie* valid admiralty claim, (2) that defendant is not found in the

district and (3) that defendant's property is located in the district, it is entitled to attach as much money as is prayed for in the Verified Complaint without regard to whether it can produce supporting evidence at the post-attachment hearing. TNT is badly mistaken.

TNT confuses a plaintiff's burden of proof for the issuance of an *ex parte* maritime attachment in support of a non-frivolous admiralty claim with a plaintiff's burden at a post-attachment hearing to rebut a defendant's evidence of bad faith and evidence that the amount attached is grossly excessive. A close reading of *Aqua Stoli Shipping Ltd. v. Gardner Smith*, 460 F.3d 434 (2d Cir. 2006), proves this to be true. In enumerating examples of circumstances that warrant vacatur, the *Aqua Stoli* court made perfectly clear that its list was not intended to be exhaustive. That the *Aqua Stoli* court cited with approval Judge Leval's holding in *Integrated Container Serv. Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119 (S.D.N.Y. 1979), which specifically affirmed a district court's equitable power to vacate unfair attachments, is particularly relevant. So too is the Second Circuit's holding in *Greenwich Marine, Inc. v. S.S. Alexandria, supra*, which remains the law of this Circuit. As above, it is within this Court's equitable power to vacate an attachment whenever it believes that the underlying claim is frivolous. Assuming *arguendo* that the Court decides that TNT's claim is not frivolous, it must still scrutinize the parties' evidence on damages and then adjust the amount of security accordingly.

## ARGUMENT

### POINT I

### THIS COURT HAS THE ULTIMATE DISCRETION TO EITHER VACATE OR REDUCE THE ATTACHMENT

The Second Circuit has held that "the inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge."

4

*Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965)." *Sea Transp. Contrs., Ltd. v. Indus. Chemiques Du Sengal*, 411 F. Supp. 2d 386, 391 (S.D.N.Y. 2006). Furthermore, as the assessment of damages, including the provision of pre-judgment interest is the district court's discretion, it is reviewed by abuse of discretion standard." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 372 (2d Cir. 1995)("we review the district court's award for an abuse of discretion, as it is well established in this Circuit that the allowance of prejudgment interest in admiralty is a matter committed to the district court's discretion").

Rule B is an equitable remedy and thus the security awarded remains in the Court's discretion. *See Greenwich Marine, supra.* Furthermore, "a district court has the inherent authority to vacate an attachment "upon a showing of 'any improper practice' or a 'manifest want of equity on the part of plaintiff.'" *Blake Mar., Inc. v. Petrom S.A.*, 2005 U.S. Dist. LEXIS 26310, No. 05 Civ. 8033, 2005 WL 2875335, at *2 (S.D.N.Y. Oct. 31, 2005) (quoting Southern District of New York Former Local Civil Rule 12 (1986)).

Here, there is a manifest want of equity on the part of TNT where it has failed *inter alia* to reasonably mitigate its damages. A plaintiff's claim for security must account for its estimated savings with regard to the breach of the contract, *i.e.* its estimated or actual mitigation savings. *See Dongbu Express, supra.* This basic mitigation principle encourages efficient breach, and prevents the aggrieved party from making windfall profits. In *Dongbu Express, supra,* the plaintiff failed to offset the security requested by its estimated mitigation savings, arguing that it was virtually impossible to calculate its saving as a result of the premature termination of the contract. The plaintiff further asserted that expert evidence would have to be presented to the London arbitrators in order for any alleged savings to be assessed. Judge

Scheindlin dismissed this argument finding that even absent a liquidated accounting of mitigation savings, a reasonable estimate of savings must be applied to the application for security. *See Dongbu, at \*8.*

TNT failed to reasonably mitigate its damages because for six months it failed to object to the arrest. In addition, it failed to reasonably mitigate its damages by failing to charter the vessel after FHT lifted the attachment. Given TNT's failure to notify FHT of the alleged wrongful attachment, for which TNT now claims damages, granting TNT security thereon would result in a manifest want of equity. The Court would be rewarding the TNT for its failure to voice any objection to arrest. There has been no dispute that all the claimed damages would have been avoided had TNT only picked up the phone to call FHT. Instead, TNT lay silent for six months.

TNT incorrectly believed that it could avoid proving damages to this Court. TNT guessed wrong because this Court must be convinced that the amount of security is reasonable or else it must vacate or modify the attachment. The law requires TNT to act reasonably after the breach and to mitigate its damages. In light of yesterday's argument, there can be no doubt that TNT violated this duty. The Court should vacate the attachment or reduce it to a nominal amount lest there be an inequitable result.

## POINT II

### ALTERNATIVELY, PURSUANT TO RULE E(6) FHT HAS SHOWN GOOD CAUSE WHY THE COURT SHOULD REDUCE THE ATTACHMENT

A party may petition the court under Rule E(6) to reduce the amount of security provided for "good cause shown." *See Supplemental Admiralty Rule E(6).* Furthermore, reductions in security are "freely granted" when the opponent demonstrates that the security is excessive. *See Dongbu Express Co. v. Navios Corp.,* 944 F. Supp. 235, 237, 1997 AMC 34, 35-36 (S.D.N.Y.

1996) (quoting 7A James Wm. Moore et al., Moore's Federal Practice PE.14 at E-702 (2d ed. 1996)). Good cause may be found when the plaintiff has failed to reasonably estimate its damages. However, the Court may also find "good cause" to reduce the attachment, where the amount of security requested, although possibly recoverable in the underlying action, runs contrary to the contract and/or facts upon which the damages are based. Thus, when finding a defendant has shown "good cause" to reduce the attachment, the court is not required to take a position on the substantive merits of the case, or as to the recovery available under applicable foreign law. *See Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006).

The case of *Sea Transport, supra,* is illustrative. In *Sea Transport,* the plaintiff maintained that it was entitled to over 75 million dollars in damages because the contract under which its claim arose was to run "interminably" and thus, such damages could be recoverable under English Law. The court declined to take a position on plaintiff's claim under English law but found that good cause had been shown that the attachment should be reduced as it appeared that the damages requested were not in accord with the contract's provisions and the relevant facts.

Furthermore, in *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers,* 2005 U.S. Dist LEXIS 224, *5 (S.D.N.Y. 2005), the court confirmed that where the plaintiff's estimate of damages has been challenged, the court may use its discretion to apply a reasonable estimate/calculation of those damages.

Here, like in *Sea Transport,* the security should be reduced because FHT has shown good cause. TNT's claim for $10,220,000.00 cannot be reconciled with its own allegations, much less the facts. The charter party upon which TNT bases its claim is contrary to TNT's admissions.

TNT's attorney originally informed FHT that it did not have to deliver the vessel until June 8, 2006, well after FHT lifted the arrest, which would preclude the existence of the TNT-Con-Dive charter party. Furthermore, all parties involved in the alleged TNT-Con-Dive charter party have misrepresented their relationship to each other, such that it is difficult to find where one entity begins and another ends.

Thus, as in *Sea Transport,* even assuming that TNT's damages could *possibly* be recovered under foreign law, the Court should exercise its discretion to reduce the attachment to a nominal amount.

## **CONCLUSION**

For the foregoing reasons, Defendant FHT's Motion to Vacate Attachment should be granted. In the alternative, the attachment should be reduced to a nominal amount.

Dated: New York, New York
       May 16, 2007

        The Defendant,
        FAIRMOUNT HEAVY TRANSPORT N.V

        By: _/s/ Charles E. Murphy_
        Charles E. Murphy (CM 2125)
        Nancy R. Peterson (NP 2871)
        LENNON, MURPHY & LENNON, LLC
        The Gray Bar Building
        420 Lexington Ave., Suite 300
        New York, NY 10170
        Phone (212) 490-6050
        Fax (212) 490-6070

9

## AFFIRMATION OF SERVICE

I hereby certify that on May 16, 2007, a copy of the foregoing was filed. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: *[signature]*
Charles E. Murphy