UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

TRANSPORTES NAVIEROS Y                          :
TERRESTRES, S.A. DE D.V.,                       :
                                                :
                               Plaintiff,       :
                                                :        **07-CV-3076(LAP)**
          - against -                           :
                                                :
FAIRMOUNT HEAVY TRANSPORT N.V.,                 :
                                                :
                               Defendant,       :
-------------------------------------------------------- X

## TNT'S REPLY OPPOSING MOTION TO VACATE ATTACHMENT

At the recent hearing, the Court asked the parties to file memoranda addressing a discrete legal issue: What does Rule B mean when it speaks of a *prima-facie* maritime claim?

In responding on May 16, TNT confined itself to this issue, but Fairmount did not. Fairmount's submission argues a different point – that, even if a *prima facie* claim exists under Rule B, "a district court has the *equitable power* to vacate an attachment...."[1]  Begging the Court's indulgence, TNT briefly replies below.

_____

[1] *Fairmount's Sur-Reply Memorandum of Law in Support of Motion to Vacate Attachment ("Fairmount's Sur-Reply"),* at 1-2.

**A.**    *Aqua Stoli* **prohibits use of general equity powers to vacate attachments.**

*Aqua Stoli* addressed the issue raised by Fairmount: To what extent may district courts

vacate attachments even when Rule B is satisfied?  The clear message was very rarely, and

only in circumstances not present here.  The Second Circuit wrote:

> We hold that, once a plaintiff has carried his burden to show that
> his attachment satisfies the requirements of Supplemental Rule
> B, a district court may vacate an attachment only upon
> circumstances not present in this case.  Circumstances that may
> justify a vacatur can occur where (1) the defendant is present in
> a convenient adjacent jurisdiction; (2) the defendant is present in
> the district where the plaintiff is located; or (3) the plaintiff has
> already obtained sufficient security for a judgment.[2]

None of these circumstances exists here.

*Aqua Stoli* criticized another court for engaging in "a fact-intensive inquiry" in a Rule

E(4)(f) hearing.  "Such an inquiry," wrote the Second Circuit, "is improper because ***Rule B***

***specifies the sum total of what must be shown for a valid maritime attachment.***"[3]  *Aqua*

*Stoli* expressly "reject[ed] the reasoning of the more recent district court decisions that have

engaged in a broader Rule E(4)(f) inquiry."[4]

Fairmount's position – that the court has "inherent powers" to fashion rulings based

on "the equities of a particular situation" – is exactly what *Aqua Stoli* proscribes in the Rule

---

[2]  *Aqua Stoli Shipping, Ltd.  v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2nd Cir. 2006).

[3]  *Aqua Stoli*, 460 F.3d at 447.

[4]  *Aqua Stoli*, 460 F.3d at 445.

context.[5] See also *Dominion Bulk Intern., S.A. v. Naviera Panoceanica, S.A.C.* 2006 WL 3408799, *6 (SDNY 2006)*(Preska, J.)*(denying motion to vacate Rule B attachment on equitable grounds, noting "the Court of Appeals, in *Aqua Stoli Shipping Ltd.*, adopted a limiting view of the equitable power of an admiralty court.").

Because TNT's attachment satisfies Rule B, it should be maintained.

## C.    Fact-issues preclude a weighing of the equities.

At any rate, Fairmount's claim to the equitable high-ground hinges on the Court's *accepting as true* Fairmount's conspiracy theory, which posits the existence of a forged charter contract and multiple perjured declarations. The Court is in no position to make the factual findings necessary to accept this theory.

Nor is that the Court's role. A vacatur hearing inquires into whether a proper Rule B claim has been asserted and verified; it is not a mini-trial, where evidence is presented and the Court makes factual findings. Weighing evidence and finding facts will be the role of the Mexican court, which presides over the underlying case.

If the Court is skeptical about certain aspects of TNT's claim, we regret that, but skepticism about the merits, or the veracity of supporting witnesses, is not grounds for vacating an attachment.[6] For purposes of Rules B and E(4)(f), the claim need not be proved.

---

[5] See *Aqua Stoli*, 460 F.3d at 444 ("[E]quity powers of an admiralty court remain *severely circumscribed.*")(quoting *Eddie S.S. Co. V. P.T. Karana Line,* 739 F.2d 37, 39 (2nd Cir. 1984).

[6] The Court wondered specifically why TNT did not complain earlier about the wrongful arrest. The answer is that TNT understood that the arrest was being legally challenged in the Netherlands. Laymen rarely intervene in the handling of legal matters, particularly when pending in a foreign country.

Even under the minority view, discredited by *Aqua Stoli*, that evidence should be considered in a Rule E(4)(f) hearing, TNT should prevail. In a post-*Aqua Stoli* case arguing for the consideration of evidence (a rarity), the court nonetheless wrote:

> Although review of extraneous evidence is appropriate, plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case. Discovery has not yet been had, and it would defeat the purpose of attachment – preserving defendants' assets in case plaintiff is able to prevail at trial or on summary judgment – to require at this stage that plaintiffs asserting a "valid *prima facie* maritime claim" prove that the facts in the complaint are true.[7]

Even under this approach, TNT's attachment was proper and should be upheld.

**D.    Con-Dive is willing to provide a copy of the replacement charter (a proprietary business record of a nonparty), if protected by a confidentiality agreement.**

At the hearing, the Court asked why Con-Dive's replacement charter (for another vessel from another company) had not been presented, indicating that it may be important corroborative evidence. We have since secured Con-Dive's permission to supply a copy to the Court, subject to a confidentiality agreement.[8] But Fairmount refuses to agree to confidentiality, preferring to keep this evidence from the Court. In other words, Fairmount argues that TNT's claim is a fraud, as shown by a lack of evidence, even as it opposes the presentation of relevant evidence – all while championing equity.

---

[7]    *Wajilam Exports (Singapore) Pte., Ltd. v. ATL Shipping, Ltd.,* 475 F.Supp.2d 275, 279 (SDNY Oct. 23, 2006).

[8]    See *(Second) Declaration of Wesley Freeman* (Exhibit "A")(attachment omitted, given lack of agreement on confidentiality).

**E.    Damages have been properly plead in satisfaction of Rule B, and, even if proof were required, it has been supplied.**

Fairmount absurdly writes: "...TNT has failed to produce *any* proof of damages."[9] As proof of damages, TNT has produced a fully signed and dated charter agreement with an independent (American) company. It also has presented declarations by a TNT witness and third-party witnesses in support of the allegation that TNT lost the lucrative charter agreement – which expressly called for TNT to be paid $100,000 per day for the vessel's services – because the vessel's wrongful arrest prevented the shipyard in Rotterdam from completing repairs in time to fulfill the charter.

In addition, a TNT witness has testified about the vessel's basic operating expenses (approximately $33,000 per day), thus allowing for a projection of the net revenue that TNT stood to earn under the charter.  This shows that the security prayed for ($10.22 million) is a conservative sum (by design), which is substantially less than TNT's projected net earnings (approximately $24.45 million over the course of a year) had the charter not been lost.

This is more that enough evidence of damages at this stage of the case.

Relatedly, Fairmount contends that TNT has failed to mitigate its damages.  This is an affirmative defense – not part of TNT's burden at a Rule E(4) hearing.  Further, Mexican law of damages will govern, and arguments over mitigation should be left to the Mexican court to assess, in the context of the full facts as developed through discovery.

---

[9]  See *Fairmount's Sur-Reply,* at 1.

Still further, Fairmount's mitigation argument presupposes a fact, which may not be true: namely, that Fairmount was unaware of TNT's ownership until its lawyer was contacted on May 15, 2006. We doubt this. We suspect that Fairmount may have been privy early-on to information suggesting that Oceanografia was not the owner. Fairmount's own evidence shows, after all, that its Mexican lawyer consulted the official Mexican Vessel Registry before the arrest was made – and the Registry indisputedly showed TNT to be the official owner. If the lawyer read what he says he read, then Fairmount had this knowledge. At the least, TNT is entitled to investigate this issue through discovery.

In order to find merit in Fairmount's mitigation argument, the Court would have to weigh evidence and make factual findings. These are tasks reserved to the Mexican court, and this Court is neither permitted, nor practically equipped, to undertake these tasks.

## CONCLUSION:

Fairmount invites the Court to do two improper things.  First, Fairmount asks the Court to broadly assess the equities and to vacate the attachment on this basis – in plain contravention of *Aqua Stoli*.  Second, Fairmount beseeches the Court to weigh evidence and make premature (and unwarranted) factual findings to the effect that TNT's case is a sham – also in violation of *Aqua Stoli*.  The Court should decline the invitation.

For these reasons, and those previously stated, Fairmount's motion to vacate should be denied.

The Plaintiff,

TRANSPORTES NAVIEROS Y
TERRESTRES, S.A. DE D.V..

By:    Christopher M. Schierloh (CS6644)
Martin F. Casey (MFC1415)
CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, New York 10017
(212) 286-0225 - telephone
(212) 296–261 - facsimile
mfc@caseybarnett.com

7