```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/6/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
TRANSPORTES NAVIEROS Y              :
TERRESTES, S.A. DE D.V.,            :   07 CV 3076 (LAP)
                                    :
              Plaintiff,            :   MEMORANDUM AND
                                    :   ORDER
      v.                            :
                                    :
                                    :
FAIRMOUNT HEAVY TRANSPORT N.V.,     :
                                    :
              Defendant.            :
                                    :
------------------------------------X

LORETTA A. PRESKA, U.S.D.J.

　　Defendant moves to vacate an order of maritime attachment and garnishment or, in the alternative, to reduce the amount of the attachment. For the reasons set out below, the motion to vacate is denied, and the motion to reduce is granted.

BACKGROUND

The Arrest of the Vessel

　　Plaintiff Transportes Navieros y Terrestes, S.A. De D.V. ("TNT") is a foreign company organized and operating under the laws of Mexico. (Compl. ¶ 2.)[1] Defendant Fairmount Heavy Transport ("FHT") is a foreign corporation

---

[1] "Compl." refers to Plaintiff TNT's Verified Complaint against FHT filed on April 17, 2007.

or other business entity organized under and existing by virtue of foreign law with its principal place of business located in The Netherlands; it does not have an office or place of business within this District. (Compl. ¶ 3.) FHT entered into a charter party with Oceanografia S.A. De C.V. ("OSA") on September 15, 2005, and during the course of that charter party certain disputes arose. (See Amended Verified Complaint in Fairmount Heavy Transport N.V. v. Oceanografia S.A. De C.V., 06 CV 15491 (TPG), Ex. 1 of Declaration of Charles E. Murphy, Esq. ("Murphy Decl."), dated May 2, 2007.) Pursuant to the charter party, all disputes were to be submitted to arbitration in London with English law to apply. (Id. at ¶ 8.) FHT commenced arbitration against OSA in London and served its claim submissions on May 18, 2006. (Id. at ¶ 9.)

On November 10, 2005, FHT attempted to obtain security for its claim in the arbitration by way of a vessel arrest in Rotterdam of the M/V CABALLO AZTECA (the "Vessel"), which FHT at that time apparently believed to be owned by OSA. (See Declaration of William Luke Marsh, Esq. executed May 1, 2007, ("Marsh Decl.") at ¶¶ 2, 5, 8.) FHT then sought an order of maritime attachment in this District attaching OSA's property in the amount of $3,604,999.50,

2

which amount fully secured FHT's arbitration claim inclusive of interest and costs.[2] (Murphy Decl. at ¶ 5.)

The Breached Charter Party

TNT alleges that on or about December 12, 2005, TNT -- the actual owner of the Vessel -- entered into a "Supplytime 89" uniform time charter party with Con-Dive, LLC for the charter of the Vessel (the "Con-Dive Charter Party"). (Compl. ¶ 4.) TNT further alleges that pursuant to the Con-Dive Charter Party, the Vessel was to be delivered on March 15, 2006, at Port Fourchon, Louisiana. (Compl. ¶ 5.) TNT alleges that prior to commencement of the Con-Dive Charter Party, the Vessel was brought to a shipyard in Rotterdam, The Netherlands, for modifications to enable her to meet the specifications of that charter party, and it was there that FHT wrongfully arrested the Vessel. (Compl. ¶¶ 6-7.)

The Present Action

Plaintiff TNT commenced this action in the Southern District of New York on April 17, 2007, by filing a Verified Complaint that included a prayer for an Order for

---

[2] See Fairmount Heavy Transport N.V. v. Oceanografia S.A. De C.V., 06 CV 15491 (TPG).

3

Process of Maritime Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. TNT alleges that FHT wrongfully arrested the M/V CABALLO AZTECA between November 10, 2005 and May 17, 2006, and caused significant monetary damages to TNT due to TNT's inability to perform the Con-Dive Charter Party. (Compl. ¶ 7, 10-12.)

This Court granted the application for maritime attachment on April 17, 2007, which authorized TNT to attach FHT's property, up to the sum of $10,220,000.00. On May 3, 2007, the Court issued an order requiring TNT to show cause why the maritime attachment order should not be vacated or the amount of the attachment reduced. A hearing on the order to show cause was held on May 15, 2007, and the parties thereafter submitted additional briefing on issues raised at the hearing.

TNT asserts that FHT failed to investigate reasonably the ownership of the Vessel before initiating the arrest and acted with reckless disregard of TNT's rights in arresting the Vessel. (Compl. ¶ 9.) The Vessel was under arrest for over six months in Rotterdam between November 10, 2005 and May 17, 2006. (Compl. ¶ 10.) However, FHT lifted the arrest one day after first being contacted by

TNT's Dutch counsel.[3] (See Declaration of Jan Fredrik van der Stelt, dated April 30, 2007 ("van der Stelt Decl.") at ¶ 10.) TNT contacted FHT by fax on May 15, 2006, requesting an immediate lifting of the arrest because the Vessel was being prepared to leave the shipyard. (van der Stelt Decl. at ¶ 8, see fax dated May 15, 2006, from TNT's Dutch counsel to FHT's Dutch counsel (with free translation from Dutch to English) attached to van der Stelt Decl. as Ex. 5.) On May 16, 2006, FHT's Dutch counsel and TNT's Dutch counsel exchanged faxes regarding TNT's request that the arrest be lifted. (See faxes dated May 16, 2006 exchanged between Dutch counsel for FHT and TNT attached to van der Stelt Decl. as Ex. 6.) Based on documents provided by TNT's Dutch counsel, on May 16, 2006, FHT confirmed to TNT that the arrest of the Vessel was lifted. (van der Stelt Decl. at ¶ 8.) On May 17, 2006, the Bailiff advised the Dutch authorities of the lifting of the arrest and confirmed this in writing in a fax message to the Port Authorities, Groningen Seaports and the Harbor Police. (See correspondence dated May 17, 2006 from Bailiff to Port Authorities attached to van der Stelt Decl. as Ex. 7.)

---

[3] As explained further, FHT's Dutch counsel confirmed the lifting of the arrest to TNT's Dutch counsel on May 16, 2006 but the Bailiff did not confirm the lifting of the arrest to the Dutch Port Authorities until May 17, 2006.

Information received from the Port Authorities reveals that the Vessel did not sail from the shipyard until July 27, 2006. (See copy of information provided by Port Authorities attached to van der Stelt Decl. as Ex. 8.)

TNT claims that as a result of the wrongful arrest by FHT, TNT was unable to deliver the Vessel as required by the Con-Dive Charter Party and thus was in breach of that contract. (Compl. ¶ 11.) As a result of the contractual breach, TNT asserts that it suffered damages consisting of: liquidated damages under the Con-Dive Charter Party in amount of 10 percent of the contract's value or $3.65 million; loss of net earnings under that charter party in the approximate amount of $6,570,000; and other damages to be proved at trial. (Compl. ¶ 12.) TNT asserts that a criminal proceeding has been filed against FHT in Mexico based on these facts to assert TNT's legal right of redress for the wrongful arrest of its Vessel. (Compl. ¶ 13.) TNT asserts in its Complaint that FHT cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure but, upon information and belief, that FHT has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the

6

hands of certain garnishee banks. (Compl. ¶ 14.) Pursuant to this order of maritime attachment, TNT has purportedly restrained an electronic funds transfer involving FHT in the amount of $1,256,354.84. (FHT's Memorandum of Law in Support of Motion to Vacate Attachment, filed May 3, 2007, ("FHT Memo")).

DISCUSSION

I. Motion to Vacate

The power to grant maritime attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006). There are uniform federal rules, called the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, that govern the practice of maritime matters in federal courts. Id. at 438. In a motion to vacate a maritime attachment, the plaintiff who obtained the attachment has the burden to show that the attachment should not be vacated. See, Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal, 411 F. Supp. 2d 386, 390 (S.D.N.Y. 2006)(internal citations omitted). Two rules

7

are particularly relevant in deciding a motion to vacate a maritime attachment; Rule B and Rule E(4)(f).

Sufficiency of a Maritime Attachment

Rule B governs the process by which a party may attach another party's assets. See Fed. R. Civ. P. Supp. Rule B(1). The Court of Appeals in Aqua Stoli stated that "in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." 460 F.3d at 445 (internal footnote omitted).

Rule E(4)(f) permits the defendant an opportunity to appear before the Court to contest the attachment once its property has been restrained by the maritime attachment order. See Fed. R. Civ. P. Supp. Rule E(4)(f). Rule E(4)(f) permits any person claiming an interest in property that has been arrested or attached to a "prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Id. However, the text of Rule E(4)(f) itself does not explain under what

8

circumstances the district court should vacate the attachment. Aqua Stoli Shipping, 460 F.3d at 438. TNT argues that at the Rule E(4) hearing stage, a plaintiff must demonstrate that it has a valid prima facie admiralty claim against the defendant. (See TNT's Supplemental Memorandum Opposing Motion to Vacate Attachment, filed May 16, 2007, ("TNT Supp. Memo") at 1-2.)

Although the Court of Appeals has not stated exactly what a plaintiff must show to make out a "prima facie admiralty claim," many district courts that have examined this issue since Aqua Stoli have adopted the "limited inquiry contemplated by Aqua Stoli" and have adopted a basic definition of the term prima facie. Most recently, Judge Robert W. Sweet has noted that "of the courts in this district to have considered the issue, the majority have interpreted Aqua Stoli to require the application of the prima facie standard when considering the adequacy of the claim asserted in the context of a maritime attachment." OGI Oceangate Tranportation Co. Ltd. v. RP Logistics Pvt. Ltd., No. 06-9441, 2006 U.S. Dis. LEXIS 46841 (S.D.N.Y. June 26, 2007)(providing summary of cases). E.g., SPL Shipping, Ltd. v. Gujurat Cheminex, Ltd., No. 06-15375, 2007 WL 831810 at *3 (S.D.N.Y. March 15, 2007), Dolco Investments, Ltd. v. Moonriver Development Ltd., No. 06-

9

12876, 2007 WL 1237997 at *4 (S.D.N.Y. April 26, 2007)(providing summary of cases and stating that "[t]he majority of courts in this district to have considered the issue have interpreted Aqua Stoli to require the application of the prima facie standard when considering the adequacy of the claim in a maritime vacatur motion"). The Court of Appeals in Aqua Stoli stated that "our conclusion leads us to reject the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry" including a district court vacatur inquiry that would impose a "fact-intensive inquiry" into a Rule E(4)(f) vacatur hearing. 460 F.3d at 445, 447.

In examining Aqua Stoli, Chief Judge Wood stated that the "Court of Appeals' holding and rationale in Aqua Stoli Shipping Ltd. also strongly undermine the standard, stated in a number of cases, that the hearing pursuant to Supplemental Rule E(4)(f) is intended to make a preliminary determination whether there were reasonable grounds for issuing the warrant or the attachment." Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06-1979, 2006 U.S. Dist. LEXIS 95870 at *14 (S.D.N.Y. Aug. 15, 2006)(internal citations and quotations omitted). Although Aqua Stoli did not explicitly address the "probable cause" or "reasonable

grounds" standard, which would place a higher burden of proof on a plaintiff to justify an attachment, the <u>Aqua Stoli</u> Court did state that a fact-intensive inquiry is "improper because Rule B specifies the sum total of what must be shown for a valid maritime attachment" and that implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry. <u>Tide Line Inc.</u>, 2006 U.S. Dist. LEXIS 95870 at *15 (quoting <u>Aqua Stoli</u>, 460 F.3d at 445). Using the less burdensome <u>prima facie</u> standard, Judge Wood explained that a proper Verified Complaint is all that is required to satisfy Rule B and to prevail against a Rule E(4) motion to vacate.[4] <u>Id.</u> at *15-16 ("Thus to show that it has a <u>prima facie</u> claim, a plaintiff seeking a maritime attachment need not provide any supporting evidence; its complaint should suffice.  Furthermore <u>Aqua Stoli</u> implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant, to carry its burden under Supplemental Rule E(4)(f).")(internal footnote omitted).

---

[4] Judge Wood also noted that use of the phrase <u>prima facie</u> claim in the maritime attachment context differs from the use of that phrase in other contexts, where it implies an evidentiary standard. <u>Tide Line Inc.</u>, 2006 U.S. Dist. LEXIS 95870 at *16 n.7.

11

Thus, maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing. SPL Shipping Ltd., 2007 WL 831810 at *2 (internal citation omitted). TNT submitted a Verified Complaint in which it alleged a proper admiralty claim against FHT and fulfilled all of the other filing and service requirements of Rules B and E. Based on the prima facie standard approved by the Court of Appeals and employed by other district courts, TNT's maritime attachment satisfies the requirements of the admiralty rules that govern maritime attachment matters and is thus sufficient.

II. Motion to Reduce Amount of Maritime Attachment

Alternatively, FHT has moved pursuant to Rule E(6) for a reduction of security, i.e., the release of the majority of the $1,256,352.84 under attachment. FHT so moves on the basis that TNT's damages "are either non-existent or grossly exaggerated." (See FHT Memo at 22.) Supplemental Admiralty Rule E(6) provides that "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given . . . ." Fed. R. Civ. P. Supp. Rule E(6). The district court may determine what "good cause" is as the Court of Appeals has held that "[t]he inherent power to adapt an admiralty rule to the

12

equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . ." Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965).

In Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996), the vessel charterer sued the vessel owner and obtained a maritime attachment in the Southern District of New York as well as in South Korea in support of a London arbitration. The owner of the vessel moved the district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment. Id. Judge Shira A. Scheindlin found that the charterer was oversecured and ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between the charterer's provable damages and the amount of the Korean attachment. Id. Judge Scheindlin held that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but noted that "the court must be satisfied that plainitff's claims are not frivolous." Id. at 237 (citations omitted).

Similarly, in Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., No. 05-7173, 2005 WL 2446236 (S.D.N.Y.

13

Oct. 3, 2005), Judge Naomi R. Buchwald granted the defendant's motion for a reduction in the amount of security under Rule E(4)(f) and Rule E(6) where the plaintiff had failed to produce evidence to the court to justify the total amount of the attachment. Judge Buchwald ordered the release of the amount that was in excess of the funds for which there was sufficient evidence to justify attachment. Id. at *2. See also Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal, 411 F. Supp. 2d 386 (S.D.N.Y. 2006)(finding "good cause" pursuant to Rule E(6) to reduce the amount of a maritime attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract).

A plaintiff's failure to mitigate its damages can be considered good cause to reduce the amount of an attachment. Even if an aggrieved party is otherwise blameless, it has a duty to mitigate its damages. See Dongbu Express Co., 944 F. Supp. at 238. In Dongbu Express, Judge Schiendlin found that the plaintiff had a duty to mitigate its damages and that its claim must be offset by the savings that it could have obtained by chartering another vessel for the term of the subcharter. See also Glidden Co. v. Hellenic Lines, Ltd., 315 F.2d 162 (2d Cir. 1963)(holding that a "party injured by breach [of

14

a charter party] cannot recover damages which arise by reason of his own inactivity or imprudence, and are not the necessary and natural consequences of the default of the other party")(internal quotations omitted); <u>Bay Casino LLC v. M/V Royal Empress</u>, 20 F. Supp. 2d 440, 454 (E.D.N.Y. 1998)(finding the maritime attachment of a vessel to be reasonable to survive a motion to vacate but reminding the plaintiff of its continuing duty to mitigate damages).

While in this case TNT alleges damages based on actions by a third party, FHT, instead of the other party to the Con-Dive Charter Party, the duty to mitigate still applies. While the Court declines to engage in a fact-intensive inquiry based on its reading of <u>Aqua Stoli</u>, it is appropriate to recognize an undisputed fact, <u>viz.</u>, that TNT was aware of the arrest for some six months before May 15, 2006, when TNT first contacted FHT's Dutch counsel. (<u>See</u> TNT's Opposition to FHT's Motion to Vacate Attachment, filed May 8, 2007, ("Opp. Memo") at 10; Declaration of Hermilo Escobedo Obrador, executed May 7, 2007, ("Escobedo Decl.") at ¶ 3.) As evidenced by the undisputed fact that the arrest was lifted within a day of TNT's first contact with FHT, it appears that TNT could have avoided virtually all of the damage it now claims had it acted promptly.

TNT argues that it was not responsible for taking steps to lift the arrest more promptly because it had asked OSA to attend to and resolve the arrest problem because TNT claimed the arrest pertained to the dispute between OSA and FHT. (See Opp. Memo at 5; Escobedo Decl. at ¶ 3.) TNT argues that because the arrest was related to these proceedings, it relied on OSA to obtain its own counsel in The Netherlands to address the arrest. (See Opp. Memo at 5.) The Dutch counsel for OSA, Sebastian Moolenaar, confirms that he was hired for advice concerning the arrest. (See Declaration of Sebastian Moolenaar, Esq., dated May 7, 2007, Ex. F of Opp. Memo.) However, TNT claims that it was the rightful owner of the Vessel at the time the arrest was effected. Thus, as the owner, TNT had a duty to take its own action to lift the arrest. TNT explains that "[l]aymen rarely intervene in the handling of legal matters, particularly when pending in a foreign country." (TNT's Reply Opposing Motion to Vacate Attachment, filed May 22, 2007, at 3 n.6.) This explanation is belied by the fact that maritime matters such as this are frequently litigated, and vessel owners are obviously capable of hiring legal representatives to perform a basic inquiry of whether the arrest is wrongful and how it could be lifted. Indeed, even Mr. Moolenaar,

16

the Dutch counsel hired by OSA to investigate the arrest, concluded that any lawsuit for wrongful arrest would have to be commenced by TNT, as the Vessel's current owner. (Moolenaar Decl., Ex. F of Opp. Memo.)  Instead, TNT argues that it was reasonable for it to rely completely on the actions of OSA and to enter into a charter party with Con-Dive in December 2005 after the Vessel had been arrested because TNT "fully expected" that the arrest would be resolved and the repairs would be completed in time for the Con-Dive Charter Party to be performed fully. (See Opp. Memo at 7.)  Whether or not the repairs were delayed because of the arrest and whether the delayed repairs affected the ability of the Vessel to complete the Con-Dive Charter Party need not be examined at this stage because they are not relevant as to whether TNT acted reasonably promptly to lift the arrest.

TNT failed to act reasonably by not taking any action for six months to lift the arrest despite the fact that it was the owner of the Vessel, it was aware of the arrest that it believed was wrongful, and it had entered into a charter party that required the use of the Vessel with

17

certain specifications.[5] In addition, after waiting until May 15, 2006, to request that the arrest be lifted, TNT asserted that the arrest must be lifted immediately because the Vessel must be ready to sail from Rotterdam to start a 450-day charter commencing June 8, 2006, at a daily rate of US $100,000.00. (See Letter faxed from Mr. Hajdasinski, TNT's Dutch counsel to Mr. van der Stelt, FHT's Dutch counsel, dated May 15, 2006, attached to van der Stelt Decl. as Ex. 5.)  TNT threatened that unless the Vessel was immediately released, FHT faced a potential claim of $45,000,000.00 based on the daily rate of hire of the Vessel under the Con-Dive Charter Party.  However, it is undisputed that 1) the arrest was lifted the day after TNT first notified FHT of its ownership of the Vessel, and 2) the Vessel did not sail from the shipyard until July 27, 2006.  Thus, the Vessel did not sail until over two months after the arrest was lifted.  These facts are not disputed and may be examined by the Court without engaging in a fact-intensive inquiry into the matters asserted in the Complaint.

---

[5] Although TNT argues in its opposition papers that TNT did act to advise FHT that it, not OSA, was the proper owner of the vessel, this fact was related by an engineer on the vessel to the process servers of the arrest papers, not to "delegates" of FHT. Furthermore, whether FHT knew of the claimed ownership or not does not excuse TNT's inactivity as to the arrest.

The Court accepts that TNT has met the prima facie standard for proving that it has a viable maritime attachment that can withstand a motion to vacate. However, the Court also accepts the undisputed fact that TNT failed to take any step to lift the arrest for some six months. On the basis of this undisputed fact the Court concludes that because TNT failed to act reasonably promptly upon being informed of the arrest of the Vessel by FHT, it failed in its duty to mitigate its damages, including damages it knew it would be exposed to upon its entering into the Con-Dive Charter Party after the arrest had been effected. Thus, FHT has demonstrated good cause for a reduction in the amount of the attachment pursuant to Rule E(6). Accordingly, the order of maritime attachment is modified to reflect the amount for which FHT may be potentially held responsible to TNT, which the Court estimates at $15,000, the outside amount that might be attributable to legal fees required to lift the wrongful arrest.

## CONCLUSION

FHT's motion [dkt. no. 20] to vacate the order of attachment is denied, but its alternative motion to reduce the amount of the attachment is granted. The amount of the

order of attachment [dkt. no. 3] is reduced to $15,000.

The excess shall be released promptly.

SO ORDERED:

Dated:   New York, New York
         July 6, 2007

*Loretta A. Preska*
LORETTA A. PRESKA, U.S.D.J.