UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— X
                                                    :
TRANSPORTES NAVIEROS Y                              :
TERRESTRES, S.A. DE C.V.                            :
                                                    :
                              Plaintiff,            :     **Civil Action No. 07-3076**
                                                    :     **Judge Preska**
        - against -                                 :
                                                    :
FAIRMOUNT HEAVY TRANSPORT N.V.,                     :
                                                    :
                              Defendant,            :
————————————————————————— X

## **TNT'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**

MAY IT PLEASE THE COURT:

        In reducing TNT's attachment to the nominal sum of $15,000, the Court has ruled that

TNT is *barred as a matter of law* from recovering any damages that it may have incurred as

a result of the wrongful arrest of its vessel (save for a rough estimate of predicted attorney's

fees). More specifically, the Court has ruled as a matter of law that TNT breached a legal

duty to mitigate its damages by not acting more forcefully earlier to have the wrongful arrest

lifted

of mitigation of damages; and (3) apply the law to the facts. In each of these three steps, the Court respectfully committed legal error.

First, the Court applied the wrong body of substantive law. Since TNT's claim is pending in Mexico under Mexican substantive law, the question of mitigation arises under Mexican law. Yet the Court did not consider the question under Mexican law, but instead under U.S. substantive law, which has nothing whatever to do with the parties or the underlying dispute.

Second, even if U.S. law did apply, by drawing factual conclusions with respect to mitigation of damages, the Court erred by going beyond the limits set by *Aqua Stoli* for assessing the merits of a claim and finding facts in a Rule E(4) hearing.

Third, even if U.S. law applied and the Court were free to weigh the merits in a Rule E(4) hearing, there are genuine issues of material fact that prevent a ruling as a matter of law on mitigation at the pleading stage of this case before any discovery has been undertaken.

For each of these reasons, the Court respectfully committed legal error in its Memorandum and Order entered on July 9, 2007 and, under Fed. R. Civ. P. 59, should reconsider its ruling and should enter a revised order upholding TNT's attachment in its entirety. Each point is addressed in turn.

**A.    The Court Incorrectly Applied U.S. Substantive Law**

mitigating damages. The Court apparently applied U.S. law on mitigation of damages. While the Court's Order does not expressly state what body of substantive law was applied, the Court's citations point to application of U.S. substantive law. Yet no one has ever contended that U.S. substantive law applies in this dispute. Indeed, U.S. law could not possibly apply, as the U.S. has no connection whatever to the parties or to the underlying dispute. The United States is involved only as the forum for a Rule B attachment. And Rule B is a procedural rule, affording a strictly procedural remedy.

The substantive law that governs TNT's claim is plainly that of Mexico. TNT brings this Rule B suit in order to obtain security for its claim pending in the courts of Mexico. The Mexican suit is based upon the allegation that FHT's arrest of the CABALLO AZTECA was wrongful and actionable under the substantive law of Mexico. This was pointed out by TNT in its memoranda opposing FHT's motion to vacate, as well in two attached declarations from Mexican lawyer, Omar Olvera, who painstakingly reviewed the bases in Mexican substantive law for TNT's claim.[1]

The law of damages – and mitigation of damages – is plainly a part of the substantive law. Whether TNT is legally barred from recovering damages based upon an alleged failure to mitigate therefore is a question to be decided under Mexican law.

Failure to mitigate damages is, moreover, an affirmative defense.[2]  As such, it must

be pleaded and proved by the defendant.[3]  Yet FHT failed to support its mitigation argument

with any evidence of what Mexican law requires with respect to mitigating damages.[4]  To be

sure, TNT was not obliged to provide evidence of Mexican law relating to FHT's affirmative

defenses.

Because the Court applied the wrong body of substantive law to the mitigation-of-

damages issue, the Court respectfully erred in its Order entered on July 9.

**B.    The Court Erroneously Considered the Merits in Violation of _Aqua Stoli_.**

The Court has also committed legal error by improperly deciding damage issues as a

matter of law in a Rule E(4) hearing.

The Second Circuit in _Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd._ rejected

the use of a "fact-intensive inquiry" during a Rule E(4) hearing.[5]  As explained by another

section of this Court, such a hearing is "not intended to definitely resolve the dispute between

the parties, but only to make a preliminary determination of whether there are reasonable

---

[2] _Traveller's Int'l A.G. v. Trans World Airlines, Inc_, 41 F.3d 1570, 1580 (2nd Cir. 1994); _See also Frederick v. Kirby Tankships, Inc_, 205 F.3d 1277, 1286 (5th Cir. 2000)(Failure to mitigate is an affirmative defense under admiralty law); F.R.C.P. 8(c) (requires that an affirmative defense be "set forth" in a responsive pleading).

[3] _Schumacher v. Tyson Fresh Meats_, 434 F.Supp.2d 748 (D. SD 2006); _C. Itoh & Co. v. MIV H___ L_____ 710 F S___ 470 510 (T D L 1000)

grounds for issuance of the [attachment]."[6]

Yet a fact-intensive inquiry was an essential component of the Court's ruling here.

Whether a plaintiff has properly mitigated damages is an issue of fact.[7]  It is an issue of fact to be decided based upon a totality of the relevant circumstances.  The Court here has found as a matter of fact that TNT failed to mitigate its damages.  The Court has, moreover, drawn this conclusion of ultimate fact at the pleading stage of the case, based on a very incomplete factual record, before the parties have had any opportunity to conduct discovery.  That is plainly inconsistent with the Second Circuit's approach in *Aqua Stoli*.

The Court has also run afoul of *Aqua Stoli* by expressly premising its ruling on an exercise of the Court's "discretion" and its "inherent power to adapt an admiralty rule to the equities...."  *Aqua Stoli* rejected the notion that a district court may engage in such a "broad equitable inquiry" in assessing the propriety of Rule B attachments in hearings under Rule E.[8]

If the Court has concluded that *Aqua Stoli's* pronouncements do not apply when the defendant requests a reduction in security under Rule E(6), as opposed to a *vacatur* of the attachment in its entirety, we respectfully disagree.  We have found no basis for this

---

[6] *Wajilam Exports (Singapore) Pte., Ltd. v. ATL Shipping, Ltd.*, 475 F.Supp.2d 275, 279 (S.D.N.Y. 2006)

conclusion in law or policy. The cases cited by the Court for this proposition all pre-date *Aqua Stoli*. Further, there is no logical basis for such a distinction. The policies underlying *Aqua Stoli* apply equally to a request to reduce the amount of security as to a request to release security in full. The point of *Aqua Stoli* – that a hearing under Rule E is no occasion for a mini-trial in which evidence is introduced and weighed and in which factual findings are made – applies equally in both circumstances.

Moreover, *Aqua Stoli* would lack teeth if the district courts remained free to assess disputed issues of fact and to exercise broad equitable powers in Rule E hearings when addressing the amount of an attachment. If this were so, the district courts could in virtually every case circumvent *Aqua Stoli* by refraining from vacating an attachment in its entirety and instead reducing it to a mere nominal sum. It is difficult to imagine that the Second Circuit intended for the standards it outlined in to be susceptible to such a simple end-run.

Because the Court's ruling respectfully violates the teachings of *Aqua Stoli*, the ruling should be reconsidered and the attachment should be upheld in its entirety.

## C.    Questions of Fact Exist as to Mitigation of Damages.

Even if the Court were free under *Aqua Stoli* to rule on the merits of FHT's mitigation defense in a Rule E hearing, the Court's ruling here would still be improper. This is so because there are factual matters to be explored in discovery that bear on the mitigation issue,

Our research has failed to disclose a single case in which a Rule B attachment has been reduced – much less to a mere nominal sum – based upon an alleged failure to mitigate. This is no doubt because mitigation-of-damages is a fact-intensive issue appropriate for resolution only after the completion of discovery.

Indeed, we have found no cases that have sharply reduced the amount of an attachment below the amount claimed by the plaintiff *for any reason*. The cases cited by the Court are respectfully dissimilar from this one and do not support the Court's ruling. In those cases, the Courts merely reduced the amounts of attachments to figures, which were either plainly stipulated in the relevant contract relied upon by the plaintiff or which that had been identified by the plaintiffs themselves as the amount of the loss. The only exception is *Daeshin Shipping Company,*[9] an unreported pre-*Aqua Stoli* decision in which the court reduced an attachment based on an evaluation of damages evidence from \$1.89 million to \$1.85 million (a reduction of roughly two percent).

Our case is fundamentally different. TNT very much disputes that it failed to take reasonable steps to mitigate its loss. As has been pointed out, TNT both complained to the process servers that the arrest was wrongful and arranged for the hiring more of less immediately of a Dutch lawyer to work on securing the vessel's in the Netherlands.

The court mentions these facts, but dismisses them, on grounds that the process servers

lift the arrest" and could not reasonably rely on a lawyer hired (at its request) by another company to work on securing the vessel's release. [10]    The court's ready conclusions in this regard seem unwarranted and premature. How do we know that the process servers were not FHT's delegates?  They very well may have been.  They also may have been accompanied by an FHT representative.  Or they may have spoken with FHT representatives after the service was made.  For any of these (or other) reasons, FHT may have been advised at the outset that TNT claimed ownership of the vessel.  Indeed, this should have been discovered, if from no other source, then from FHT's Mexican counsel, who supposedly checked the Mexican vessel registry – which indisputably showed TNT as owner – before the arrest was made.

If FHT knew of TNT's claim of ownership, then nothing would have been gained by additional steps to advise FHT of this fact.  The Court's ruling improperly assumes that TNT's failure to mitigate is so blatantly clear as to render discovery on the point unnecessary and immaterial.  This conclusion respectfully is incorrect.  Discovery may reveal any number of facts that bear importantly on the mitigation question.

There is also no basis in law or logic for the Court's proposition that it was *per se* unreasonable for TNT to secure the hiring of a Dutch lawyer through a request to Oceanografia.  Under U.S. law (if it were to apply, which, again, it does not), the victim of

acted reasonably is a question of fact dependent on all the relevant circumstances. There is no rule in U.S. mitigation law to the effect that the plaintiff may not arrange for others to take reasonable steps on its behalf. In this case, a lawyer was promptly hired at TNT's request and that is certainly a reasonable step to take in the face of a wrongful arrest.

Nor is it at all clear that a lawyer representing Oceanografia would not have been able to act to secure the vessel's release. In the U.S., Oceanografia may well have standing to challenge the arrest of a vessel made in its name to collect on a debt allegedly owed by it. To be sure, Oceanografia would have a stake in the outcome of such a case. The court's ruling erroneously presupposes that it should have been obvious to TNT from the outset that attorney Moolenaar – simply by virtue of having been hired by OSA – could not work reasonably on getting the arrest released.

The overriding point is that the discovery would reveal facts that bear importantly on the question whether damages were properly mitigated here. The Court erred in concluding that the mitigation issue could be decided as a matter of law based on a woefully incomplete factual record.

**CONCLUSION**

For the foregoing reasons, TNT respectfully requests that the Court reconsider its ruling entered on July 9 and revise the ruling to uphold TNT's attachment in full.

set by the Court.

The Plaintiff,
TRANSPORTES NAVIEROS Y
TERRESTRES, S.A. DE C.V.

By: 

Alfred J. Rufty, III
Chris Schierloh
CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, New York 10017
(212) 286-0225   Telephone
(212) 286-0261   Facsimile
cms@caseybarnett.com