UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
TRANSPORTES NAVIEROS Y                              :
TERRESTRES, S.A. DE C.V.                            :
                                                    :
                Plaintiff,             :
                                                    :   **Civil Action No. 07-3076**
     - against -                                 :   **Judge Preska**
                                                    :
FAIRMOUNT HEAVY TRANSPORT N.V.,                     :
                                                    :
                                                    :
                Defendant,             :
------------------------------------------------------------ X

## TNT'S REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION

MAY IT PLEASE THE COURT:

       In further support of its motion for reconsideration, TNT replies to FHT's Opposition as follows:

**An Error of Law by The Court Supports Reconsideration**

       In its first point, FHT alleges that TNT did not satisfy the standards for reconsideration. However, TNT specifically states "the Court respectfully committed legal error."[1] According to FHT, an error of law by the court is one of the accepted grounds for reconsideration. However, TNT explicitly set forth that the Court erred as a matter of law in determining that TNT was required to mitigate its damages, in applying U.S. substantive law

---

[1] TNT's Memorandum of Law in Support of its Motion for Reconsideration, page 2.

1

in determining mitigation of damages, and in determining damages as a matter of law in an Rule E(4) hearing contrary to Aqua Stoli.[2]

FHT's argument that TNT does not assert a basis for Rule 59 motion is patently incorrect.

What FHT does *not* argue is even more telling. FHT does not deny that TNT's claim against FHT is governed by Mexican law. FHT does not deny that failure-to-mitigate damages is an affirmative defense on which it bears the burden of proof. FHT does not deny that this affirmative defense is part of the substantive law of damages and, as such, is a matter to be decided under Mexican law. FHT does not deny that it has failed to present the Court with any authorities or evidence to establish that this affirmative defense is available and satisfied under Mexican law. Nor, for that matter, does FHT even deny that TNT's damages may be available in full under Mexican law.

**It was an Error of Law to Reduce Security Based on Mitigation of Damages**

FHT defends the Court's Order with this inscrutable argument: "[T]he Court may find 'good cause' to reduce the attachment where the amount of security requested, *although possibly recoverable in the underlying action*, runs contrary to the facts upon which the damages are based ." (emphasis added) What FHT apparently means to suggest is that the Court may reduce an attachment to almost nothing, effectively depriving the plaintiff of security for its claim, whenever the Court considers this equitable – even when *the*

---

[2] 460 F.3d 434 (2nd Cir. 2006).

*attachment is proper under Rule B* and even when *the full damages may be recoverable* in the underlying action!

What a remarkable power this would be. Under this approach, the Court need not even concern itself with the recoverability of the claimed damages. The Court would be free to "do equity" regardless. The Court would be free to discriminate among even recoverable claims, giving thumbs-up in allowing meaningful security for some, and thumbs down to others, as the Court wishes based on its view of the equities.

This is plainly not the law. No case ever decided stands for this proposition. This proposition is antithetical to *Aqua Stoli*, which instructed that the courts do *not* have free reign to impose their conceptions of equity in Rule B hearings. It is also antithetical to Rule B, which is plainly designed to permit plaintiffs to obtain security for their potentially recoverable damages where, as here, the requirements of the rule are met.

FHT cites *Sea Transport Contractors, Ltd v. Industries Chemiques Du Senegal*[3] for the proposition that the Court may reduce an attachment regardless whether the full damages may be recoverable in the underlying action under the controlling foreign law. The case says no such thing. If anything, it stands for the opposite principle.

In *Sea Transport*, the attachment was based on damages stemming from two contracts. One of the contracts called for a term of two years to be automatically renewed unless one of the parties was in material breach. The plaintiff initially attached $75 million which

---

[3] 411 F.Supp.2d 386 (S.D. NY 2006)

represented damages for 30 years on the basis that the contract was practically "interminable." The court held that because the plaintiff had alleged that the defendant was in material breach of the contract, the applicable period for calculating damages was two years only. The reduction was thus based on the plain language of the contract and the allegations of the Verified Complaint.

The court's statement that, even though it had "good cause to reduce the amount seized under the Rule B attachment, it [took] no position as to the recovery available in the British Courts under British law," means nothing more that it says: the court would not infringe upon the sovereignty of the British court or British law by decreeing what recovery, if any, should be awarded in the underlying action in the British court. The court did, however, determine for our its own purposes that the maximum recovery that could be available, given the plain language of the contract and the plaintiff's own allegations, were damages for two years. That conclusion was so obvious and fundamental as to not require study of British law; it is obviously true that British law enforces contractual agreements, and the contract in question stated that it would not renew beyond the initial two-year term in the event of a breach, such as the plaintiff was alleging.

There is no basis whatever for construing the court's one sentence as intending to introduce a radical new concept into Rule B law: that the recoverability of the claimed damages in the underlying action does not matter and that the courts are free to reject or reduce attachments based on equitable principles regardless. Such a concept was wholly

unnecessary under the straightforward circumstances of this case. If this is what the court has in mind, presumably the court would have said so.

Similarly, *Greenwich Marine, Inc. v. S.S. Alexandria* does not support the proposition that the Court may entertain a substantive law argument in finding "good cause" to reduce the amount of security. *Greenwich* merely states as a general principle that admiralty courts may tailor equitable remedies. First, *Greenwich* did not involve Rule B(1), a Rule E(4) hearing, or a Rule E(6) request for reduction of security. In that case, the court dismissed a cause of action based on prematurity. It had nothing to do with reducing security in a maritime claim. Second, *Greenwich* was pre- *Aqua Stoli*. It is just such a broad equitable discretion that the Second Circuit in *Aqua Stoli* cautioned against in the Rule B context.[4]

None of the cases cited by the Court or by FHT support the proposition that the Court may, in its equitable discretion, reduce security in an E(4) hearing to a nominal sum based on substantive issues of law which require a fact-intensive inquiry. In *Dongbu Express v. Navios Corp.,*[5] there were two attachments. One in Korea and one in New York. The federal district court in New York reduced the amount of the attachment there so that the total amount between the two attachments equaled the amount of the plaintiff's full claim. In *Daishin Shipping Co., Ltd. v. Meridian Bulk Carriers, Ltd*[6] the amount of the attachment was

---

[4] 460 F.3d at 446.

[5] 944 F.Supp. 235 (S.D. NY 1996).

[6] 2005 WL 2446236 (S.D. NY).

only reduced from $1,894,778 to $1,851,016 - a change of $43,762 or only 2.3%. There the reduction was based on an amended damages calculation submitted by the plaintiff. This bears no resemblance to what the Court has done in this case.

In the cases discussed above, the reduction in security was based on proof supplied by the Plaintiff. In the instant case, as in *Sea Transport*, the amount of the attachment was supported by the plain language of the contract giving rise to the underlying claim. None of the cases support a huge reduction in security based on matters wholly extraneous to the complaint and supporting documentation submitted by the plaintiff.

The Court respectfully committed a clear error of law by reducing the amount of security to a nominal sum based on its view that TNT had failed to mitigate its damages. The Court's action violates the Second Circuit's mandate in *Aqua Stoli* that, in a Rule E hearing on a Rule B attachment, that the district court refrain from both a fact intensive inquiry and in exercising broad equitable discretion.

### Even If It Was Not Error to Consider Substantive Law Arguments, Mitigation of Damages Is Not Recognized by Mexican Law

As pointed out in its Memorandum in Support of its Motion for Reconsideration, the substantive laws of Mexico apply to TNT's claims of wrongful arrest against FHT. If any damages recoverable under that cause of action are to be reduced by the plaintiff's failure to mitigate, then, plainly, Mexican law as to mitigation of damages must be applied.

FHT incorrectly asserts that this Court already considered TNT's Mexican law argument. Yet nowhere in the Court's 20-page Memorandum and Order does the Court

discuss Mexican law. The Court based its mitigation-of-damages ruling on U.S. legal standards, which plainly do not apply. None of the cases cited by the Court used foreign law as a basis for reducing the amount of security. Respectfully, it is clear legal error for the Court to rule that TNT has breached the duty to mitigate damages when the Court is unaware whether such a duty exists under the controlling (Mexican) law and, if so, what it requires.

Indeed, mitigation-of-damages is *not* a defense available under Mexican law. This is established by the attached declaration of distinguished Mexican law professor, Omar Olvera. (See Exhibit "A"). In reducing the attachment to essentially nothing based upon a legal doctrine that does not apply in this case, the Court committed plain legal error.[7]

**Even if U.S. Law Applied, The Court's Ruling Would Be Error**

Under U.S. law, failure to mitigate damages is an affirmative defense.[8] As such it must be pleaded and proved by the defendant.[9] Like other affirmative defenses, it cannot be raised by the Court *sua sponte*.[10] Even if mitigation of damages was an available, by failing to plead it as an affirmative defense, FHT has waived it. In the instant case, FHT did not

---

[7] Exhibit A.

[8] Traveler's Int'l A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1580 (2nd Cir. 1994); See also Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1286 (5th Cir. 2000)[Failure to mitigate damages is an affirmative defense under admiralty law).

[9] Schumacher v. Tyson Fresh Meats, 434 F.Supp.2d 748 (D. SD 2006); C. Itoh & Co. v. M/V Hans Leonhardt, 719 F.Supp. 479, 510 (E.D. La. 1989); F.R.C.P. 8(c) requires that an affirmative defense be set forth in a responsive pleading.

[10] Mowbry v. Cameron County, 274 F.3d 269, 281 (5th Cir. 2000)[Court cannot raise an affirmative defense sua sponte.]

plead much less prove that TNT failed to mitigate its damages.[11]

Second, as long as the course of action chosen by the Plaintiff is reasonable, the plaintiff can recover despite the existence of another, perhaps more effective, alternative.[12] A plaintiff's efforts to mitigate need not be successful, just reasonable.[13] TNT was not required to take all action possible to avoid more damage, just to take some reasonable action.[14] Here, TNT attempted to mitigate its damages through the attempts by a Dutch attorney retained by Oceanografia to have to arrest of the vessel lifted. Whether a plaintiff's actions at the time were reasonable is judged solely from the plaintiff's perspective at the time the mitigation allegedly should have occurred. TNT had every reason to believe that the attorney hired by Oceanografia was competent to handle the matter and that Oceanografia, who had a stake in having the arrest vacated by virtue of its possible liability to TNT, was working diligently in that regard. It was error for the Court to insist that TNT follow a course of action different from the reasonable one it followed.

The Court asserts that TNT "had a duty to take its own (legal) action to lift the

---

[11] The burden to prove failure to mitigate is on the defendant. C. Itoh & Co. v. M/V Hans Leonhardt, 719 F.Supp. 479, 510 (E.D. La. 1989)

[12] Federal Ins. Co. v. Sabine Towing & Transp. Co., Inc., 783 F.2d 347 (2nd Cir. 1986); Van Syckle v. C.L. King & Assoc., 822 F.Supp. 98 (N.D. NY 1993).

[13] In re Worldcom, Inc., 361 B.R. 675 (Bankr. S.D. NY 2007); Long Island Savings Bank, FSB v. U.S., 60 Fed. Cl. 80 (Fed.Cl. 2004)

[14] Temple-Inland, Inc. v. U.S., 68 Fed. Cl. 561 (Fed. Cl. 2005).

8

arrest."[15]  Injured parties are generally not required, however, to institute lawsuits in order to mitigate their damages.[16]

Mitigation of damages as well as the adequacy of mitigation efforts is a question of fact.[17]  Yet engaging in a fact intensive inquiry at a Rule E hearing violates *Aqua Stoli*. Further, there are many issues of fact to be determined which would bear on whether TNT failed, as a matter of law, to adequately mitigate its damages.

The Court's Order evinces a belief that if TNT had sent a letter demanding release of the vessel earlier, FHT would have immediately complied and the arrest would have been lifted, preventing essentially all damages from being incurred.  This ignores a crucial fact. The vessel was in a shipyard in Rotterdam for repairs and refitting. As soon as the vessel was arrested, the shipyard stopped working on the vessel and its crews went to work on other projects.

Even if TNT had reacted in the manner the Court advocates, hiring its own lawyer immediately after the arrest and, after a brief a diligent investigation by that lawyer, sending a letter and filing a legal action requesting that the wrongful arrest be lifted, this may not have averted any of TNT's damages.  Even if these actions had been promptly taken and

---

[15] Memorandum and Order, July 9, 2007, page 16.

[16] Stone v. Satriana, 41 P.3d 705 (Colo. 2002); Levantino v. Ins. Co. Of North America, 422 N.Y.S.2d 995 (N.Y. Sup. 1979); Broser v. Royal Abstract, 260 N.Y.S.2d 487 (N.Y City Civil 1965).

[17] Fisher v. First Stamford Bank, 751 F.2d 519 (2nd Cir. 1984); Summit Petroleum Corp. v. Ingersol-Rand Financial Corp., 909 F.2d 862 (6th Cir. 1990).

resulted in a lifting of the arrest in just one week, TNT's full damages still may have been incurred. This is because there is no guarantee of when the shipyard would have resumed work on the CABALLO AZTECA. Because of the arrest, the shipyard was no longer willing to work on credit and ceased repairs. The Court cannot merely presume on no evidence that with the lifting of the arrest the shipyard would have immediately reversed this change in policy.

As it was, the shipyard did not resume work until TNT was able to make a substantial payment. Further, the shipyard workers had to finish the other projects they were working on before returning to the CABALLO AZTECA. The affidavit of Adriann Eggens, the managing director of the repair yard, attached to TNT's Opposition to FHT's Motion to Vacate establishes that the arrest delayed completion of the repairs by nearly four months. But for that four month delay, the repairs likely would have been completed in time for TNT to perform under the charter agreement.

There is no evidence that an earlier lifting of the arrest would have averted the delay (triggered by the arrest) in the completion of repairs. The Court's perception that TNT did not act diligently matters (even under U.S. mitigation standards) only if the more aggressive actions that the Court believes should have been taken would have avoided or minimized the loss. But there is no such evidence in this case. The shipyard delays (again, caused by the arrest) may have happened even if the arrest had been lifted far earlier. In presuming otherwise on no evidence, the Court has plainly erred even if U.S. mitigation law applied

here.

**The Court has Discretion to Issue a Stay Pending Resolution of the Instant Motion**

In its Motion for Reconsideration, TNT moved for a stay of this Court's July 9, 2007 Order pending resolution of its motion. It is important to note that, at that time, TNT did not request a stay pending appeal. That may very well come later. Pursuant to F.R.C.P. Rule 62(b), the court has discretion to stay the execution of or any proceedings to enforce a judgment pending disposition of a motion for new trial or to alter or amend a judgment made pursuant to Rule 59 or Rule 60.

**The Court's Order is Appealable**

FHT asserts that this Court's July 9 Order will not be reviewable on appeal. This is incorrect. The collateral order doctrine as set for by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp*[18] provides that an interlocutory order is immediately appealable if it (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) would be effectively unreviewable on appeal. *Cohen* held that an order vacating a maritime attachment was immediately appealable for the reason that later review "would be an empty rite after the vessel had been release and restoration of the attachment only theoretically possible." In considering a vacature of an attachment brought pursuant to Rule B, the Ninth Circuit stated that given that the loss of security is final, an early review of the district court's decision is

---

[18] 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed 1528 (1949).

favorable.[19] Further, it noted that Rule B attachments are similar to other provisional remedies such as preliminary injunctions, lis pendens, and writs of attachment and garnishment which are generally appealable.[20]

The Court's Order technically did not deny security to TNT but the amount of security granted would provide no protection for TNT's underlying claims. It is well settled that an order denying security is appealable when the order presents an important question of law whose resolution will guide courts in other cases.[21] In the instant case, such a question of law exists as to the Court's authority to consider and decide on issues of substantive law regarding damages, especially when intensive fact finding is required, in a Rule E(4) hearing brought subsequent to a Rule B(1) attachment. It seems likely that the Second Circuit would wish to address a decision which departed from its mandate in *Aqua Stoli*.

The cases cited by FHT are inapposite. They merely stand for the proposition that an order denying a motion to vacate an attachment is not immediately appealable. But TNT does not wish to appeal the Court's denial of FHT's motion to vacate. Rather, TNT will if necessary appeal the Court's ruling reducing its security to almost nothing. This is more akin to an appeal of an order vacating security, which *Cohen* itself held to be immediately

---

[19] Pride Shipping v. Tafu Lumber Co., 898 F.2d 1404 (9th Cir. 1990)

[20] Id.

[21] Atlantic Fertilizer v. Italmare, 117 F.3d 266 (5th Cir. 1997); Result Shipping v. Ferruzzi, 56 F.3d 394 (2nd Cir. 1995); Banque Nordeurope S.A. v. Banker, 970 F.2d 1129 (2nd Cir. 1992)

immediately appealable under the collateral order doctrine.

In the instant case, the Court asserted that it based its decision to reduce the amount of the attachment on its equitable discretion in matters of setting security.  However, in fact, the Court's decision was based on its erroneous belief that it had the authority to decide as a matter of law at a Rule E(4) hearing that TNT had a duty under substantive law to mitigate its damages, and further, what the effect of TNT's perceived failure to mitigate had on its ultimate recovery.   This places the Court's Order in the former, appealable category.

**If Not Appealable, Then A Writ of Mandamus is Available**

The Second Circuit has held that, in cases such as this, when the district court makes an error in the scope of its authority equating to a question of law, the proper remedy is a petition for mandamus.[22]  If the Order is not appealable under *Cohen* because it is a order granting security or an order denying a motion to vacate, then TNT has no other remedy to challenge the Court's decision.  The funds now attached will be gone and TNT will be without security even remotely adequate to secure its underlying claims.

In its Opposition, FHT states that TNT could seek an appeal of the Court's Order after a judgment on the merits.  This completely ignores two facts: (1) the underlying litigation is in Mexico, and (2) the amount of the attachment at present is wholly inadequate to secure TNT's claims in the Mexico litigation.. Once a judgment in its favor is reached, TNT would have to again move for attachment of FHT's funds in an amount sufficient to secure the

---

[22] Sequros Banavenez S.A. v. S/S Oliver Drescher, 715 F.2d 54 at 56.

judgment. However, if the Court's Order has not been reviewed by the appellate court, then TNT's chances for a different outcome are slim to none. That is why, if the Court does not certify the Order for immediate appeal or the Second Circuit determines that the collateral order doctrine does not apply, a writ of mandamus would be the only avenue of redress for TNT.

## Conclusion

For the reasons stated above, Plaintiff Transportes Navieros Y Terrestres S.A. respectfully request that this Honorable Court reconsider its Order of July 9, 2007 and restore the amount of the original attachment.

> The Plaintiff,
> TRANSPORTES NAVIEROS Y
>     TERRESTRES, S.A. DE C.V.
>
> By:    **s/s Alfred J. Rufty III**
>
> Alfred J. Rufty III
> HARRIS & RUFTY L.L.C.
> 650 Poydras Street, Suite 650
> New Orleans, Louisiana 70130
> (504) 525-7500
> (504) 525-7222
> ajr@harrisrufty.com
> Chris Schierloh
> CASEY & BARNETT, LLC
> 317 Madison Avenue, 21st Floor
> New York, New York 10017
> (212) 286-0225  Telephone
> (212) 286-0261   Facsimile
> cms@caseybarnett.com

**AFFIRMATION OF SERVICE**

      I hereby certify that on August 13, 2007, a copy of the foregoing was filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                              **s/s Alfred J. Rufty III**