UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRANSPORTES NAVIEROS Y
TERRESTRES, S.A. DE C.V.,

                Plaintiff,                        07 CV 3076 (LAP)

   -against-

FAIRMOUNT HEAVY TRANSPORT N.V.,

                Defendant.
-----------------------------------------------------------X

## DECLARATION OF Ph.D. OMAR OLVERA DE LUNA

1.    My name is Omar Olvera de Luna; I was born in Mexico City on July 1st 1943. I attended Universidad Nacional Autonoma de Mexico School of Law ("UNAM"), the largest and most prestigious University in the Hispanic World, graduating in the class of 1965, and have been admitted to the bar in the whole Mexican Republic since 1968. I have been a Corporate, Commercial Contracts and Maritime Law Professor at UNAM since 1970. I have written two Law Hornbooks and one text book, the first hornbook is Maritime Law written in 1981, the second is Commercial Contracts written in 1982 and the text book is Corporate Law which is used at the Corporate Law class at UNAM. I was granted a degree in Philosophy Doctor in Law by Pacific Western University. I also received a degree in Philosophy Doctor in International Maritime Law by Atlantic International University. Furthermore, I was granted the "Honoris Causa" degree as a Philosophy Doctor in Law also by Atlantic International University. Recently, I received the honorary degree of "Doctor of the Academic Claustro of the Legal Department" at UNAM. I have been a member of the Mexican Bar Association since 1978. I am the founding partner of my law firm of Olvera & Monroy Abogados which has been in existence since 1968 where I have practiced Maritime, Commercial, Contract and Criminal Law.

2.    This Declaration is submitted in support of Plaintiff Transportes Navieros y Terrestres, S.A. de C.V.

1

3. The Mexican legal system gets its formality through its laws' publications and through the fulfillment of certain terms and requisites like:

## WARRANTY OF TITLE AND RESTITUTION
### [EVICCIÓN Y SANEAMIENTO]

This warranty was exercised by the purchaser Transportes Navieros y Terrestres S.A. de C.V. ("TNT") against Oceanografia, S.A. de C.V. ("OSA"), the seller of the vessel "Caballo Azteca", due to its wrongful arrest, within the 6 months period permitted by law, according to articles 2124, 2119, 2120, 2122, 2149, 2283 subsection III of the Mexican Federal Civil Code.

### Mexican Federal Civil Code

> Article 2124.- A purchaser after being served must complain to the purchaser about the warranty of title given against any claims upon the vessel acquired....

> Article 2119.- There is no warranty of title when the thing acquired is taken away from the purchaser in whole or in part, according to a sentence which grants judgment, due to senior rights.

> Article 2120.- Every seller is obligated to give warranty that the title conveyed shall be good and its transfer rightful; and the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge, even if its not under a contract...

> Article 2122.- Any pact is null and void if it releases a purchaser from his responsibilities for a warranty of title, if he is acting in bad faith...

> Article 2149.- The actions which have effect according to articles 2142 to 2148, extinguish after 6 months, counting from the day of delivery of the thing acquired, without prejudice of the special case referred in articles 2138 and 2139. ...

> Article 2283.- The seller is obligated to:
> I. Deliver the thing sold;
> II. Give warranty title; giving the thing free from lien or ecnumbrances
> III..Give it clear of hidden defects.

4. The Mexican Federal Civil Code is applied to the present case as ordained by the Navigation and Maritime Commerce Act in its article 6, subsection VII. TNT followed the Mexican regulations in respect of this case.

*[signature: Omar Olvera]*

## Navigation and Maritime Commerce Act

> **Article 6.-** In the absence of any legal order expressed by this law, its rules and by the International it will be substituted by:
> ...
> VII. The Federal Civil Code and the Federal Civil Procedure Code

## NATIONAL MARITIME PUBLIC REGISTER

5. Once OSA proved there were neither claims against the vessel acquired nor encumbrances, TNT during the following 90 days proceeded to prove his ownership over the vessel "Caballo Azteca", in accordance to article 265 of the Navigation and Maritime Commerce Act, so as to lift the wrongful arrest of the vessel.

> **Article 265.-** In maritime matters when there is need to summon a defendant with a foreign residence, the summons will be done through a rogatory letter or through his shipping agent at the address registered by him with the maritime authority. The summons will only be possible through shipping agents that meet all the legal requisites established in article 23 of this statute.
> If the defendant has his residence within the jurisdiction of the District Judge who is in charge of the process, the defendant must answer the complaint within 9 days from the time the summons is effective.
> If the defendant resides outside the jurisdiction just mention and he is summoned through his shipping agent, the defendant must answer the complaint within 90 business days from the day the summons is done at the address registered by the agent with maritime authority.
> In the judicial or administrative proceedings where a ship is seized and ship is registered in the country, the certificate of inscription and maritime lien must be presented at the National Maritime Public Registry before it is appraised and auctioned. The creditors that appear in the certificate will be called for so they can exercise the rights that this law gives them.

| TIME FRAME | |
|---|---|
| 6 months | Warranty of Title and Restitution |
| 3 months | To lift the Wrongful Arrest. |
| **TOTAL = 9 months** | |

3

## DAMAGES AND LOSS PROFITS

6. Fairmount Heavy Transport N.V. is obliged to pay damages and loss profits to TNT, according to articles 2108 and 2109 of the Mexican Federal Civil code, applied to the present case as ordained by the Navigation and Maritime Commerce Act in its article 6, subsection VII.

> Article 2108.- It is understood as damage, the loss or impairment suffered in ones assets caused by the non-fulfillment of an obligation.

> Article 2109.- It is considered damage, a privation of any legal gain which should have been obtained with the fulfillment of an obligation.

7. The wrongful arrest of the vessel "Caballo Azteca" made Transportes Navieros y Terrestres S.A. de C.V. ("TNT") to stop earning the proceeds from the charter party agreement between TNT and Con-Dive. Therefore, TNT has the right to request damages in a criminal process in Mexico according to article 20, paragraph B, subsection IV of the Mexican Constitution which states that the victims of a criminal action have the right to request the repair of the damages that were caused by the convicted person. This is an Individual Guarantee that can be requested through article 8 and 35, subsection V, with the right of petition.

> **Article 20.-** In every criminal trial the **victim or the accused shall enjoy the following guarantees:**
> ...
> B.- Of the victim or person offended:
> ...
> IV.- **Have damages repaired.** In the appropriate cases, the District Attorney will be obligated to **seek repair of the damages**, and if the judge has delivered a guilty sentence, the judge may not absovle the convicted person of the repair of the damages.
> (emphasis added)

> **Article 8.** The public servers shall respect the right of petition, as far as this is in writing

4

> in a pacific and respectful manner. However in political matter, this right can only be used by the citizens of the [Mexican] Republic.

> **Article 35.** It is a right of the citizens:
> ...
> V. To exercise in any matter the right of petition.

8. The request to repair damages and loss profits in this matter is also supported by the Criminal Procedure Code of the State of Tabasco in its articles 258 trough Article 258 states that from the Previous Investigation ("*Averiguación Previa*") the victim has the **right to present evidence** to the DA in order to prove the criminal liability of the accused, **the damages and loss of profits and its amount.** The victim can even request **preliminary measurements** in order to reinstate his rights.

> **Article 258.-** From the Criminal Investigation ("*Averiguación Previa*") **the offended can act on behalf of his own interests,** in personam or assisted by counsel, if he does not have counsel the District Attorney will assign one who will assist the offended.
> Throughout the Criminal Investigation, **the offended may give the District Attorney all the elements needed** that are in his possession **that will help probe** the crime, the probable criminal liability, **the damages and loss of profits caused by the crime and the amount of such.**
> As well, the offended **may request the adoption of measures** that will help him reinstate his rights and the enjoyment of the goods affected by the crime. He may also request preventive measures if appropriate...

9. Article 261 of the Criminal Procedure Code of the State of Tabasco further confirms the right to request damages and loss of profits. It states that even if in the Criminal Investigation preventive attachment was not ordained, in the second stage (the prosecution) the judge can order a preventive attachment to guarantee the damages and loss of profits caused.

5

10. The damages will be solved at sentencing according to article 263 of the Criminal Procedure Code of the State of Tabasco. Furthermore, article 263 also states that even if the criminal case is dismissed, the civil procedure will continue under the criminal judge until a judgment is pronounced regarding the reparation of the damages and loss profits.

11. The calculation of damages and loss profits is governed by the Civil Code of Tabasco. The Civil Code of Tabasco is applied to the present criminal procedure because article 262 of the Criminal Procedure Code of the State of Tabasco ordains that the calculation of damages and loss profits will be regulated by the Civil Procedure Code of Tabasco which in turn sends us to the Civil Code of Tabasco.

12. Damages and loss profits are clearly defined in Mexican Law, specifically article 2050 of the Civil Code of Tabasco states the following:

> **Article 2050.** Concepts.
> It is understood by **damages** the loss suffered in the assets for the act committed that the law considers the source of liability.
> It is understood as **loss of profits** a deprivation of any legal profit that would have been obtained if the liability act would not have happened.
> (emphasis added)

13. According to article 2053 of the Civil Code of Tabasco the reparation of the damages consists on having the things returned to the state before the liability act occurred and if that is impossible, then total payment of the economical and defamatory damages and loss of profits would have to be done.

14. Under Mexican law, there is no duty to mitigate damages recognized. In any case, TNT acted diligently under Mexican law.

6

**CRIMINAL CASE**

15. TNT filed a complaint against Fairmount Heavy Transport N.V., with the number DAPF-54/2007 in the District Attorney Office in the State of Tabasco. On August 1st, 2007, an ocular inspection had effect in the vessel "Caballo Azteca" by authorities of the aforementioned District Attorney Office.

16. According to article 20 paragraph b) subsection IV of the Mexican Constitution, the ocular inspection considered certain damages and loss profits to TNT. The ocular inspection document is attached hereto as **Exhibit 1.**

> Article 20.- In every criminal trial the **victim or the accused shall enjoy the following guarantees:**
> ...
> B.- Of the victim or person offended:
> ...
> IV.- **Have damages repaired.** In the appropriate cases, the District Attorney will be obligated to **seek repair of the damages**, and if the judge has delivered a guilty sentence, the judge may not absolve the convicted person of the repair of the damages.
> (emphasis added)

**CONCLUSION**

17. The Court's motion to reduce the amount of the attachment to $15,000 US dollars represents no guarantee in this maritime matter, as it is an insignificant amount of money considering the damages and loss profits to the vessel.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th Day of Agust 2007

7



"2007, año del 150 Aniversario de la Incorporación Definitiva
del Municipio de Huimanguillo al Estado de Tabasco"

**TABASCO**
Trabajar para transformar

[DIRECCION DE AVERIGUACIONES PREVIAS FORANEAS]

DIRECCIÓN DE AVERIGUACIONES PREVIAS.
OFICIO No. 2049
EXPEDIENTE: DAPF-054/2007.

ASUNTO: EL QUE SE INDICA.

Villahermosa, Tabasco., a 06 de agosto de 2007.

Se anexa Diligencia de Inspección Ocular y Fe Ministerial del Barco denominado "CABALLLO AZTECA", realizada el día 01 de agosto de 2007.

Lo que hago de su conocimiento para todos los efectos legales a que haya lugar.

ATENTAMENTE
"SUFRAGIO EFECTIVO NO REELECCION"
EL AGENTE INVESTIGADOR DEL MINISTERIO PUBLICO
ADSCRITO A LA DIRECCIÓN DE AVERIGUACIONES PREVIAS

LIC. LUIS ALFONSO GARCIA CUPIDO.

SUBDIRECCION DE
AV. PREVIAS FORANEAS
VILLAHERMOSA, TAB.

L'LAGC/mmu"

Av. Paseo Usumacinta #602,
Col. El Aguila
Villahermosa, Tabasco
Tel 3-13-05-50 Ext. 1217
www.pgjtabasco.gob.mx

DILIGENCIA DE INSPECCION OCULAR Y FE MINISTERIAL DEL BARCO DENOMINADO CABALLO AZTECA.- En la Ciudad de Villahermosa, Capital del Estado de Tabasco, Republica Mexicana, siendo las (10:00) diez horas del día (02) dos del mes de Agosto del año (2007) dos mil siete, el suscrito Agente Investigador del Ministerio Público quien actua legalmente con sus testigos de asistencia quienes al final y en su unión firmaran - - - - - - - - - - - - -
- - - - - - - - - - - - - D A   F E - - - - - - - - - -
Que siendo las (13:30) trece horas con treinta minutos del día (01) uno del mes de Agosto del año (2007) dos mil siete, el personal actuante de esta oficina en compañía del Ingeniero HERMILO ESCOBEDO OBRADOR, asistido por el DOCTOR EN DERECHO MARITIMO OMAR OLVERA DE LUNA, así como el C. JAVIER CORTES, Perito Tecnico Criminalista de Campo de la Dirección de los Servicios Periciale, nos constituímos por vía terrestre, al municipio de Ciudad del Carmen, Campeche, especificamente al helipuerto donde abordamos un helicoptero el cual nos transportó por vía aerea al lugar donde se encontraba el barco "CABALLO AZTECA", siendo este al costado de la plataforma UECH-A, del activo litoral Tabasco, Dependiente de Dos Bocas, Paraiso, Tabasco, con la siguiente posición geográfica, latitud norte 19 grados 05, latitud Oeste 0.92 grados 31.9549., lugar donde descendimos del helicoptero, especificamente en el helipuerto del Barco "CABALLO AZTECA", en donde fuimos recibidos por la tripulación del barco en especial por el C. ENRIQUE SILVA SASTRE, quien se obstentó con el cargo de Capitan de Altura, del barco en mención, con quien nos identificamos y le hicimos saber el motivo de nuestra presencia, el cual nos permite el acceso y nos conduce al area del PUENTE DE MANDO, en donde se observan diversas maquinarias, equipos de computo y el control de mando del barco en comento, observando también, consolas de posicionamiento del sistema, area de estación de radio, y mesa de cartas nauticas, así mismo, visible a la vista de todos, se aprecia el número de registro siendo este 0401128735-3, (IMO-8624395), en donde tambien se señala que dicho barco tiene como señal distintiva de radio XCUB, seguidamente nos conduce el capitan al Cuarto Nivel del Barco, en donde se aprecia cuatro cabinas, dos oficinas y una sala de cine, aclarando que las cabinas tienen una dimensión





de aproximadamente (4) cuatro metros de largo por (3.5) tres metros y medio de ancho, con sus respectivo baño de aproximadamente metro y medio cuadrado, así mismo, existe empotrado en la pared un distintivo en el que señala la cabina 441-446, acto seguido nos conduce al tercer nivel que se encuentra compuesto por la cabina del capitan, en donde existe sala de juntas, oficina y recamara con el distintivo 391-406, seguidamente nos constituímos al segundo nivel en donde existen tres oficinas un generador de genergía, la cubierta donde se observan botes salvavidas con capacidad para sesenta y cinco personas, así mismo se observan los compresores para el aire acondicionado y una oficina de area de administración, seguidamente nos constituímos al primer nivel en donde se ubica el area de comedor con capacidad para ciento cincuenta personas donde se tiene a la vista muebles propios de dicha area, seguidamente el capitan, nos conduce al area de las cabinas F, compuesta de dos niveles en donde existen veinte cabinas, diez por cada nivel, acto seguido nos conduce al Nivel Castillo y/o Castillo de Proa, en donde existe un consultorio médico, diez cabinas, modulo AP (babor) y AS (Estribor), con ocho cabinas babor, y siete cabinas a estribor, se observa un gimnasio, existe un comedor fuera de servicio, seguidamente nos conduce al area de estribor donde se encuentra una ancla, huinches de maniobra y cadenas del barco; acto seguido, nos conducen al area de los propulsores de proa en donde se encuentran los transformadores, tableros de control electrico de los propulsores 1, 2 y 3, seguidamente nos conducen al area de motores en donde existen tres de estos, dos asimutales, de 1,200 kw cada uno, estos se encuentran en Proa, tres motores denominados tunel thruster de 700 kw, cada uno, dos apopa y uno a proa, seguidamente nos conducen a la cubierta principal en donde se ubica la cocina, la lavandería y el cuarto de maquinas, con area de pañoles, entrada al area de cocina, tambien se aprecia el area denominada de gambuza (donde se guarda la comida), en el area de lavandería se encuentra personal laborando comunmente y se observan seis lavadoras automáticas, así mismo en el area de cubierta principal se observan maniobras por parte del personal, laborando comunmente, dos gruas, una para levantar herramientas y





personal y la segunda para equipo pesado (500 toneladas), también se encuentra el area de buceo, que cuenta con sub-areas, que le llaman superficie, saturación e hidrido (de rebote), en donde personal del Area de Buceo, nos muestra un casco de los que utiliza para realizar maniobras de buceo, así también, una mascarilla, se aprecia una camara de alta presión y otra camara de descompresión, una consola de buceo con sistema de comunicación, seguidamente nos conducen al area de maniobra de popa donde se encuentran los huinches de maniobras y huinches de lava, se observa el cuarto de cambio de ropa para el personal que a decir del capitan del barco el personal una vez que termina sus labores pasan a dicho cuarto y se cambian el uniforme reglamentario para ingresar al interior del barco con su ropa civil, asi mismo se encuentra el area de construcción, seguidamente nos conducen al area de gimnasio general en donde existe una bodega y un taller, aclarando que dicho gimnasio, cuenta con canchas de basquet bol y de fut bol rápido en la bodega se aprecian diversos instrumentos y material pesado de fierro, seguidamente nos conducen al cuarto de propulsión de popa donde se encuentran los controles electricos, dos motores de 700 kw, un motor electrico que hace girar la propela del barco. seguidamente el capitan del barco nos conduce a la sala de maquinas y/o cuarto de control de maquinas, el cual cuenta con doble sistema de seguridad, tres motogeneradores MWM-AUXILIARES, y dos motogeneradores WARTSILA principales, en dicha sala de maquinas existen dos motogeneradores Caterpillar, lugar en donde somos atendidos por el C. VICTOR HUGO AMBROSIO GUEVARA, Jefe de Maquinas del Barco "CABALLO AZTECA", así mismo no se omite manifestar que dicho barco, tiene las siguientes dimensiones: Eslora total 159.7 metros, eslora entre perpendiculares 151.4 metros, manga 30.4 metros, puntal 12.0 metros, calado 5.5 ligero /9.0 cargado, arqueo bruto: 13,514 y arqueo neto 4,777; maquinarias: maquinas principales 2 X Wartsila Sulter, 7.790 HP, cada una, 2 x Caterpillar, 2.101 hp cada una, HP TOTALES: 19,782 hp, impulsores para posicionamiento dinamico, 3 x tunel truster, HRP, 700.700 kw, c/u, dos a popa y uno a proa, propulsión principal 1 x propela sencilla tipo tornillo, sistema de posicionamiento: sistema de posicionamiento



dinámico velocidad kongsberg cdp2 (sistema gemelo de cómputo), sistema de referencia 2 x 2 DGPS, kongsberg seatex, dps.100, 1 x fan Beam laser imdl fambeam 4, acomodo: área habitacional totalmente equipada con aire acondicionado, calefacción y aislada de ruido y calor hasta para trescientos veintinueve personas, bajo el siguiente arreglo 9 x suites sencillas, 14x cabina doble, 73 x cabinas cuadruples, oficina para clientes y tripulación, varias cabinas pueden ser convertidas a requerimiento, equipo de izajes: grua principal 1 x grua Frostrans, krupp modelo kr, 1000/1-k 5001, systeme, uso de capacidad maxima de carga de 500 toneladas, capacidad 300 tons. helipuerto tipo construcción octagonal de veinte metros fabricado de placa de acero, localizado a proa, capacidad de carga hasta para Bell 212 o helicoptero con peso equivalente, capacidades: combustible, 1,034 metros cubicos, agua potable 877 metros cubicos, potabilizadoras 2 x 50 ton./dia, autonomia/consumo: velocidad de crucero 10 nudos, consumo de combustible 15 tons/dia, consumo de agua potable 60 tons/dia, consumo de aceite lubricante 200 lts.; equipo en cubierta : tipo y tamaño de anclas 2 x 6 tons. (anclas de fondeo), 1 x 6 tons., de repuesto, pasarela 1 por pasarela para transferencia de personal ubicada a popa, para ser izada por la grua principal, seguidamente esta representación social dentro de la misma diligencia ministerial en donde se fedata todo lo actuado, se va ordenando al perito técnico criminalista de campo tome las fijaciones fotográficas correspondientes conforme a los artículos 85 y 89 del código de procedimientos penales, de igual forma se le concede el uso de la voz al c. ENRIQUE SILVA SASTRE, capitán de altura del barco denominado " CABALLO AZTECA " el cuál manifiesta que dicho barco tiene como función especifica, diversos trabajos de especialización en costa afuera primordialmente de PETROLEOS MEXICANOS, en las que destaca el envio de cables y buceos de saturación y que dicho barco genera diariamente una ganancia de 125,000 dolares los cuales multiplicados por los 365 dias del año, da una ganancia de 456'250,000 dolares y por diez años arroja un importe bruto de 456'250,000 dolares lo cual como se especifica anteriormente genera en diez años, con lo anterior se da por terminada la presente




AVER. PREV. DAPF-054/2007.-                                    PAGINA No.

diligencia, con fundamento en los artículos 01 de la Constitución Política de los Estados Unidos Mexicanos en relación con el 27 y 83 del Código de Procedimientos Penales vigentes en el Estado de Tabasco.- - - -DAMOS FE. SE CIERRA Y SE AUTORIZA LO ACTUADO.- - - - - - -CUMPLASE.

EL C. AGENTE INVEST. DEL MINIST. PUB. AUX.
DE LA DIREC. AVER. PREV. FORANEAS.

LIC. LUIS ALFONSO GARCIA CUPIDO.
TESTIGOS DE ASISTENCIA.

WESLEY FRANCISCO PALMA CANEPA.   DOMINGO JIMENEZ GONZALEZ.

*The following is a rough translation of the "Diligencia de Inspección Ocular y Fe Ministerial del barco denominado Caballo Azteca".*

**Diligence for visually taking evidence and ministerial testimony of the ship "Caballo Azteca".- In the city of Villahermosa, Tabasco, Mexico, at ten a.m (10:00) of August second (2) of the year two thousand and seven (2007). Myself (the investigative agent) and my assisting witnesses give testimony of the following:**

At 13:30 of August 1st, 2007, myself (the investigative agent), the witnesses, the Engineer Hermilio Escobedo Obrador, Ph.D. in Maritime law Omar Olvera de Luna and the Criminalist Technician Expert from the Division of Expert Services, C. Javier Cortes, went to Ciudad del Carmen, Campeche, where we all boarded a helicopter which would bring us to the ship "Caballo Azteca" which is located on the side of platform UECH-A of the *Dos Bocas* port. The location is north latitude 19 degrees 05, west latitude 0.92 degrees 31.9549. We landed on the ship's heliport. At the ship we were received by the Captain Enrique Silva Sastre.

The captain then guided us to the BRIDGE where there are multiple machinery, computers, the control of the ship, nautical letter's table, radio, as well as the registry number of the ship which is 0401128735-3 (IMO-8624395), where it also says that the ship has the distinctive radio signal of XCUB.

Next, the captain guides us to the fourth level of the ship where there are four cabins, two offices and one movie theatre. The cabins are 4 meters long by 3.5 meters wide with a bathroom of 1.5 square meter. There is also a sign on the wall that says "cabin 441-446".

Then, the captain guides us to the third level of the ship where the Captain cabin is located. There is also a conference room, an office and cabin with the sign "391-406".

After we go to the second level where there are three offices, an energy generator, the deck where the lifeboats are located with a capacity for 65 people, the machinery for the air conditioning and an administrative office.

Later we went to the first level where the dinning room is located with capacity for 150 people. After, the captain takes us to the area of F cabins which has two levels where there are 20 cabins, 10 for each level.

Then the captain takes us to the "Bow Level and/or Forecastle level" where there is a medical office, 10 cabins, AP module (port side) and AS (Starboard), with 8 portside cabins and 7 starboard cabins. There is also a gymnasium and an out-of-service dining area.

The captain then conducted us to starboard area where there is the anchor, *huinches de maniobra* and chains. Then we go to the area of the portside propels, its controls... 3 motors called Thruster of 700 kw.

Then we go to the main deck where the kitchen is located, the laundry room where there is people working and 6 laundry machines. There is also the machinery room and a storage room for the food. On the main deck crew members were working. There were 2 cranes, one to lift tools and personnel, and the second one to lift heavy machinery (up to 500 tons). There is also a diving area where the crew shows us a helmet used for diving, as well as a mask. There is high pressure cabin and a decompression chamber and a communication console for the divers.

Then we were guided to the stern where the maneuver *huinches* and the *leva huinches* are located. There is also a room for changing clothes where the personnel can change once his duties are over. We were also guided to the construction area, the gymnasium which has a basket ball and soccer fields. At the gymnasium there is a storage room and a workshop where there are several instruments and heavy iron material.

After, we were guided to the stern propulsion room where there are electrical controls, two motors of 700 kw, one electrical motor that makes the propel turn. Then we went to the machinery room which has a double security system, 3 moto-generators MWM-AUXILIARES and 2 moto-generators WARTSILA, there are also two Caterpillar moto-generators. In this place where are assisted by the Chief of Machinery of "Caballo Azteca", C. Victor Hugo Ambrosio Guevara. He told us that the ship has the following dimensions: length 159.7 meters, length between perpendiculars 151.4 meters, beam 30.4 meters, *puntal* 12 meters, *calado* 5.5 light / 9.0 heavy, gross aforo: 13.514 and net aforo 4,777.

Machinery: 2 X Wartsila Sulter, 7.790 HP, each, 2 x Caterpillar, 2.101 hp each, HP totals: 19, 782 hp, impulsors for dynamic positioning, 3x tunnel truster, HRP, 700.700 kw, each, two at portside and one at bow, principal propulsion 1 x simple propel screw type.

Position system: dynamic positioning, siurad Kongsberg sdp2 (twin computer system), reference system 2 x 2 DGPS, Kongsberg seatex, dps. 100, 1x fan beam laser imdl fambeam 4.

Accommodations: habitation area totally equipped with air conditioning, heat and blocked from noise up to 329 people, under the following arrangement 9 x simple suites, 14x double cabins, 73 x quadruple cabins, client's and crew office, several cabins can be converted upon requirement, *izajes* equipment, principal crane 1 x Frostrans, krupp model kr, 1000/1-k 5001, system, one of maximum capacity of 500 tons, capacity 300 tons. Heliport in an octagon shape of 20 meters made of

stainless steel, located at the bow, with a capacity up to Bell 212 or equivalent weigh.

Capacity: 1,034 cubic meters combustible, 877 cubic meter of drinking water, *potabilizadoras* 2 x 50 tons. Autonomy / consume: 10 knotts velocity, combustible consume of 15 tons a day, consume of drinking water 80 tons a day, consume of oil for machinery 200 liters.

Equipment on deck: anchors 2 x 6 tons, 1 x 6 tons replacement anchor, gangway for the crew.

After this description is taken, the Criminal Expert is ordered to take the corresponding photographic fixations according to articles 85 and 89 of the Criminal Proceedings Statute of Tabasco. In this same manner, the Captain Enrique Silva Sastre is allowed to make an statement. He manifests that the "Caballo Azteca" does specific jobs for *PETROLEOS MEXICANOS*, specially the sending of cables and divers of saturation, that the ship makes a profit of $125,000 dollars which if multiply for 365 days of the year is equal to $456, 250, 000 dollars, multiplied by 10 years then the gross total is $456,250,000.

With the above mentioned, the diligence is over according with articles 21 of the Mexican Constitution with relation to article 27 and 83 of the Criminal Proceedings Statute of Tabasco.

We give testimony. The things done are authorized and closed. Fulfill it.

The C. Investigatory Agent of the Assistant District Attorney from the Department of Foreign Investigations.

Lic. Luis Alfonso Garcia Cupido.
Assistant witnesses.

Wesley Francisco Palma Canepa.   Domingo Jimenez Gonzalez